[L. A. No. 12739. In Bank.—June 22, 1931.]

JOSEPH F. CLARK, Appellant, v. J. LEROY PATTERSON et al., Defendants; NEW YORK INDEMNITY COMPANY (a Corporation), Respondent.

Paul C. Hill for Appellant.

Culver & Nourse and Paul Nourse for Respondent.

CURTIS, J.—The facts in this case were correctly stated by the District Court of Appeal, when this action was before that court. As therein stated, they are as follows:

"The appeal in this case is from the judgment and order of the superior court reversing the judgment of the municipal court in favor of appellant as to the respondent New York Indemnity Company, a corporation.

"The case was tried upon a stipulated statements of facts which, in so far as material, are that the respondent New York Indemnity Company issued to one J. LeRoy Patterson its broker's bond in the sum of $2,000 pursuant to the provisions of the Real Estate Brokers' Act (Stats. 1919, p. 1252, and acts amendatory thereof); that while said bond was in force, to-wit: on the 3d day of February, 1926, said Patterson, acting as a real estate broker, through his agent E. F. Gleason, undertook to sell to appellant a certain parcel of land whereby the said Patterson undertook to endeavor to secure from the Pacific Development Company a contract for the sale and conveyance of said real estate; the said Patterson made and delivered to appellant a purchaser's preliminary sales contract covering the property, at which time appellant paid to Gleason the sum of $855, which was in turn paid to and received by Patterson, excepting the amount due Gleason on account of his commission; that Patterson deposited the amount received by him in his own account, which was thereafter levied upon under attachment in

another action brought against Patterson; Patterson never at any time paid the $855 or any part thereof to the Pacific Development Company or anyone else; that Patterson appropriated the same to his own use and purpose. Appellant, being unable to obtain the repayment of his money, consulted an attorney, which attorney obtained from Patterson a promissory note dated August 10, 1926, without the knowledge of the surety, New York Indemnity Company, which note provided for the repayment of the sum to appellant with interest at the rate of 8 per cent per annum, in monthly instalments of $100 each, the first payment to be made on the date of the note, the said note also providing in the event of default the whole amount of principal and interest should become immediately due and payable and for the payment of attorney's fees in the event suit or other proceedings were taken to enforce the payment of the note. The note also contained the following provision:

" 'This note shall not be, and is not a waiver by the said Joseph F. Clark of any rights, nor a release of myself, E. F. Gleason, or the Pacific Development Company from any liability upon or arising out of that certain preliminary sales contract, executed by the said Joseph F. Clark under date of February 3, 1926, until this note has been fully paid and satisfied. J. L. Patterson.'

"Upon the execution of the note Patterson paid the sum of $100 and thereafter an additional sum of $100. This action was commenced for the purpose of collecting the unpaid balance. Subsequent to the filing of the action in the municipal court the further sum of $100 was paid, leaving at time of trial a balance of principal unpaid to plaintiff in the sum of $550."

The validity of the judgment rendered herein against the plaintiff and in favor of the New York Indemnity Company hinges upon the answers to be given to the two questions:

1. Did the bond given under the Real Estate Brokers' Act cover the misappropriations of the money paid to Patterson, the real estate broker in the transaction set forth above?

2. Did the execution and delivery of the promissory note by Patterson to the plaintiff for the money misappropriated by him release the surety on said bond?

We will consider these two questions in the order named.

By section 9a of the Real Estate Brokers' Act it is provided that all applicants for broker's license "shall . . . file with the said real estate commissioner a satisfactory bond to the people of the State of California . . . in the amount of $2,000 conditioned for the faithful performance by such broker of any undertaking as a licensed real estate broker under this act. Any person injured by the failure of a real estate broker to perform his duties, or comply with the provisions of this act, shall have the right in his own name to commence such an action against said real estate broker and his sureties for the recovery of any damage sustained by the failure or omission of said real estate broker to perform his duties or either of them, or to comply with the provisions of this act or any of them." The bond given by Patterson with the New York Indemnity Company as surety and filed with the commission followed and complied with all the terms of this section of the act. In fact, the condition of the bond is in substantially the precise words contained in said section 9a and quoted above.

There is no question but that under the foregoing statement of facts the plaintiff would have a good cause of action against Patterson for the money misappropriated by the latter. Respondent concedes this. It takes the position, however, that this liabilty on the part of Patterson was not one which was covered by the bond for the reason that it was no part of the duty of a real estate broker to receive or accept money on a sale of property brought about through his efforts.

It relies in support of its position upon certain decisions of this and other courts which deal with the duties and powers of real estate agents. Among the authorities relied upon by respondent are: *Stemler* v. *Bass,* 153 Cal. 791 [96 Pac. 809], *Ropes* v. *Rosenfeld,* 145 Cal. 671 [79 Pac. 354], *Zeimer* v. *Antisell,* 75 Cal. 509 [17 Pac. 642], *Gold* v. *Phelan,* 58 Cal. App. 471, 476 [208 Pac. 1001], *Sibbald* v. *Bethlehem Iron Co.,* 83 N. Y. 378 [38 Am. Rep. 441], and *Halsell* v. *Renfrow and Edwards,* 14 Okl. 674 [2 Ann. Cas. 286, 78 Pac. 118]. These cases hold in effect that the authority of a real estate agent deputed to sell real estate is simply to find a

purchaser and he has no power to bind his principal by a contract of sale unless such additional power is expressly conferred upon him. In *Gold* v. *Phelan, supra,* it is stated that "such a broker has no authority to execute any agreement binding either of the parties to the transaction, nor has he the right to accept money offered by the purchaser to conclude the sale. And when the purchaser pays money into the hands of a broker in such a case, the broker holds it as the agent of the purchaser and not the seller, and any misappropriation thereof would necessarily be at the loss of the former and not the latter". We may concede that these authorities contain a correct statement of the law in reference to the powers and authority of a real estate agent or real estate broker. He has no authority to bind either party by any agreement, and if he accepts money from the purchaser the seller is not bound by such acceptance. However, if he does accept money and misappropriates it he is liable to the person from whom he accepts it. Respondent contends therefore that, as it is without his power or authority to accept money from the purchaser and thereby bind his principal, when he does so he is not acting as a real estate broker but in his private capacity and while he may be personally liable for the repayment of said money, his surety is not liable for his misappropriation thereof.

This question has never been directly passed upon by this court. It was, however, before this court on a petition for transfer in the case of *Nittler* v. *Continental Casualty Co.,* 94 Cal. App. 498 [271 Pac. 555, 272 Pac. 309]. In that case the money was paid by the purchaser to the broker, who upon the consummation of the sale refused to pay it to the seller, his principal. The latter brought action against the surety upon the broker's bond, and recovered judgment for the full amount of money paid the broker and which he had withheld from his principal. On appeal the District Court of Appeal affirmed the judgment, and we denied a petition for a transfer thereof to this court. We quote from this case, page 504, as follows:

"Finally it is argued that the breach for which recovery was had does not come within the terms of the bond. Section 9a of the Real Estate Brokers' Act, as amended in 1923 (Stats. 1923, p. 93), calls for a bond conditioned for the faithful performance by the broker of any undertaking

as a licensed real estate broker under the act. The same section provides that any person injured by the failure of the broker 'to perform his duties, *or* comply with the provisions of the act' has a right of action against the broker and the surety for the recovery of damages sustained by the failure of the broker to perform his duties *or* to comply with the provisions of the act. ▮ The bond which was given pursuant to the terms of the act is in the same language. It will be noted that the breach for which recovery may be had may arise either from a failure of the broker to perform his duties as such or from his failure to comply with any of the provisions of the act. In this respect the act differs from the Corporate Securities Act, prior to its amendment in 1925, which required a bond conditioned for the 'compliance with the provisions of law'. This language was held, in *Blumenthal* v. *Larson,* 79 Cal. App. 726, 730 [248 Pac. 681, 251 Pac. 241], to relate to a compliance with the terms of the Corporate Securities Act alone. The same ruling was made in *Mitchell* v. *Smith,* 204 Cal. 197 [267 Pac. 540], where the court commented upon the amendment to the Securities Act in 1925, which extended the liability of the surety under bonds given pursuant to the act. The language of the Real Estate Brokers' Act, like this amendment of 1925, is so much broader than the language of the original Securities Act that the cases cited are not applicable to the case presented here. If the act intended to limit the application of the bond to a failure to perform duties specified in the act itself there would have been no need of adding the alternative—the failure on the part of the broker to perform his duties as a licensed broker. It cannot be doubted that when a licensed broker has obtained the proceeds of a sale of property belonging to his principal and refuses to turn over such proceeds to his principal he has failed to perform the duty incumbent upon him as such broker or agent irrespective of any provisions of the act requiring him to do so.''

We are satisfied of the correctness of this decision. It expressly holds that it is a violation of the duty of a real estate broker who has received the proceeds of a sale to refuse to turn over and pay the money received to his principal. We can see no reason why the same rule should not apply when the broker receives money from the purchaser,

and refuses to repay it to the purchaser, when for any reason, not due to the fault of the purchaser, the sale is never consummated. He owes the same duty to the purchaser in such a case as he would to the seller after the completion of the sale. In each case the duty is one which he has incurred while acting as a real estate broker, and for his failure to perform such duty his surety is liable to the person damaged.

The second question involved in this appeal as noted above is whether the acceptance of the note of Patterson by the plaintiff released the surety.

The answer to this question in our opinion must be governed to a large extent by our decision in the case of *Hammond Lumber Co.* v. *Richardson Bldg. etc. Co.*, 209 Cal. 82 [285 Pac. 851]. That was an action against a surety on a contractor's bond, given in pursuance of section 1183 of the Code of Civil Procedure. As required by this section of the code the bond there sued upon provided that "the same is hereby expressly made to inure to the benefit of any and all persons who perform labor upon or furnish materials to be used in the work described in the said contract, or in any modification thereof; and any and all such persons shall have and are given a right of action to recover upon this bond against the said principal and sureties, or either of them in any suit brought to foreclose mechanics' liens which may be filed by such persons, or any of them . . . , or in a separate suit . . .". The plaintiff in that action furnished materials to the said contractor which were actually used in the construction of the building which was the subject of said contract. These materials were furnished some time prior to the twenty-eighth day of September, 1923, and the indebtedness therefor appeared on the books of the plaintiff as an ordinary book account, and the court found that it "was and had been payable on or before the 28th day of September, 1923". Thereafter and on the twenty-sixth day of December, 1923, the contractor gave to plaintiff its promissory note payable ninety days from date thereof. This note covered various sums of money due plaintiff by the contractor including the indebtedness incurred for the materials furnished the contractor under the contract for the performance of which the bond sued upon in said action was given. This note was accepted by the plain-

tiff in said action, and the court found that the same was given "without the knowledge or consent of the defendant sureties, or either of them". Upon these facts we held that the giving by the contractor and the acceptance by the materialman of the promissory note did not release the sureties on the bond of the contractor, in the absence of an agreement that said promissory note was given and accepted as payment of the debt due from the maker of the note. The principal authority relied upon by the court in support of such ruling was the case of *United States Fidelity & Guaranty Co.* v. *United States,* 191 U. S. 416 [48 L. Ed. 242, 24 Sup Ct. Rep. 142], which action was also brought against sureties of a contractor to recover for materials furnished the contractor. The company furnishing the materials had taken two promissory notes by the contractor for the amount of its account, due thirty and sixty days respectively from date. The question presented for decision was whether the acceptance of these notes by the company discharged the surety. In answering the question in the negative the court said:

"In an ordinary guaranty the guarantor understands perfectly the nature and extent of his obligation. . . . In such cases he contracts in reliance upon the exact terms of his principal's undertaking, and has a right to suppose that no change will be made without his consent; and the courts have gone so far as to hold that any change will exonerate him, though it really redound to his benefit.

"This covenant, however, is inserted for an entirely different purpose from that of securing to the government the performance of the contract for the construction of the building. . . . The guarantor is ignorant of the parties with whom his principal may contract, the amount, the nature, and the value of the materials required as well as the time when payment for them will become due. These particulars it would probably be impossible even for the principal to furnish, and it is to be assumed that the surety contracts with knowledge of this fact. Not knowing when or by whom these materials will be supplied, or when the bills for them will mature, it can make no difference to him whether they were originally purchased on a credit of sixty days, or whether, after the materials are furnished, the time for payment is extended sixty days, and a note given for the amount

maturing at that time. If a person deliberately contracts for an uncertain liability, he ought not to complain when that uncertainty becomes certain. . . . The rule of *strictissimi juris* is a stringent one, and is liable at times to work a practical injustice. It is one which ought not to be extended to contracts not within the reason of the rule, . . ."

The legal principles established by these authorities are similar to those involved in the present action. The bond in each of the cited cases, as well as that in the case before us, was given for the express purpose of covering not some particular known and specified obligation, but an uncertain liability which might arise in the future by reason of some dereliction of duty on the part of the principal. The case of *Hammond Lumber Co.* v. *Richardson Bldg. etc. Co.*, *supra*, is particularly in point. In that case a promissory note was taken by the plaintiff for money due for materials furnished, payable on or before ninety days from date. In the present action the note was payable in monthly installments of $100 each, and in default of payment of any installment when due the whole amount of the note should become immediately due. In neither case prior to the execution of the note therein was there any definite agreement as to the time of payment. The materials were purchased without any time agreed upon for their payment. The money was paid to Patterson with no time fixed for its repayment. In each case the time of payment was subsequently fixed by the promissory note given by the debtor. We held in the Hammond Lumber Company case that the surety was not released. The same ruling in our opinion must apply in the present action.

Judgment of the superior court is reversed and the judgment of the municipal court is affirmed.

Shenk, J., Richards, J., Seawell, J., Langdon, J., and Preston, J., concurred.