**PHILLIP METROPOLITAN COLORED METHODIST EPISCOPAL CHURCH, Appellant, v. GENERAL CASUALTY CO. OF AMERICA, Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 7080.   Decided   May 2, 1949.

Wm. A. McClain, Berry, McClain & White, Cincinnati, for appellant.

James G. Headley, Headley, Taft & Headley, Cincinnati, for appellee.

**48**

## OPINION

By MATTHEWS, J.:

The Municipal Court sustained the general demurrer of the General Casualty Company to the amended bill of particulars and the plaintiff not desiring to plead further, the court entered judgment of dismissal at plaintiff's costs in favor of the General Casualty Company. This appeal is from that judgment.

The sole issue raised by the appeal is whether a cause of action against General Casualty Company is alleged in the amended bill of particulars.

It is alleged in the amended bill of particulars that the General Casualty Company is, and was at all times mentioned in the amended bill of particulars, a corporation engaged in the bonding and surety business; and that its co-defendant Wahn-Evans Company is, and was at all such times a corporation authorized to and engaged in the business of a real estate broker, under a broker's license issued by the State of Ohio.

The amended bill of particulars purports to state two causes of action. The first relates to the conduct of Wahn-Evans & Company as a real estate broker in a transaction between the plaintiff and the First English Lutheran Evangelical Church. The second cause of action purports to allege a cause of action against General Casualty Company as surety upon the real estate broker's bond of Wahn-Evans & Company given in accordance with the requirements of §§6373-25 to 6373-51 both inclusive, of GC. However, as the allegations of the first cause of action are expressly incorporated into the second cause of action, it is necessary to consider all the allegations of the amended bill of particulars. The General Casualty Company recognized that it was necessary to consider all the allegations by directing its demurrer to the entire amended bill of particulars.

From the amended bill of particulars we learn that the plaintiff owned real estate located at 643 Carlisle Avenue in the City of Cincinnati, and desired at purchase real estate located at 1208 Race Street in that City, owned by the First English Lutheran Evangelical Church. On August 13th, 1947, the plaintiff employed Wahn-Evans & Company to act as a real estate agent in purchasing the 1208 Race Street property and of advising it in the financing of the purchase. In due time, Wahn-Evans & Company reported to the plaintiff that the Race Street property could be purchased for $50,000.00, and

that it could sell the plaintiff's property at 643 Carlisle Avenue for $20,000.00 and could arrange for financing the balance of $30,000.00 necessary to complete the purchase, that thereupon the plaintiff made a written offer to purchase the real estate at 1208 Race Street for $50,000.00, and deposited $1,000.00 with Wahn-Evans & Company as earnest money to bind the bargain, and that this offer was accepted by the First English Lutheran Evangelical Church. It also appears that Wahn-Evans & Company was unable to arrange for the financing of the purchase by this plaintiff, but represented to the plaintiff that if given an additional 90 days it could do so, and that if this extension was given and it failed to arrange for the financing within that time "then it would return to plaintiff at the direction of the seller the plaintiff's binder money in the amount of $1,000.00," and that thereupon the plaintiff entered into a new contract, a copy of which was attached to the amended bill of particulars and incorporated therein. It is also alleged that Wahn-Evans & Company failed again in its efforts to finance the purchase and, as a result, the seller rescinded the contract and notified Wahn-Evans & Company of such rescission and directed it to return to the plaintiff the $1,000.00 deposited with it as earnest money which Wahn-Evans & Company, after repeatedly promising to do, finally failed and refused to do, although demand had been made therefor by the plaintiff.

The prayer was for judgment against both defendants for $1,000.00 with interest from the date of the rescission of the contract by the seller and its direction to Wahn-Evans & Company to return the $1,000.00 deposit to the plaintiff.

It is contended that the facts alleged do not show a breach of the statutory bond upon which the General Casualty Company is surety and that, therefore, the demurrer to the amended bill of particulars was properly sustained. In passing upon the validity of this contention, we must give full effect to the relevant statutes (§§6373-25 to 6373-51 GC) and treat those statutes as though they were fully set forth in the bond signed by General Casualty Company and in the amended bill of particulars filed by the plaintiff.

Before, however, considering the legal effect of the allegations of the amended bill of particulars, it would be well to make some reference to the terms of the contract, a copy of which is attached to and incorporated in the amended bill of particulars. It is in the form of an offer by the plaintiff to pay $50,000.00 for the 1208 Race Street real estate, $1,000.00 of which was payable in cash accompanying the offer in the following manner:

"I/we hereby deposit One Thousand —— Dollars ($1,000.00) as above provided with Wahn-Evans & Company as agent for the seller, to apply on the purchase price which is to be retained by the agent until the terms of this contract have been complied with. Said payment to be refunded if offer is not accepted or if title to said Real Estate is not as above set forth."

Appended to this offer was an acceptance including an agreement to pay Wahn-Evans & Company the prescribed commission and authorizing it "When this transaction is completed, to apply the above payment in your hands in connection therewith toward the payment of such commission." And following that acceptance there was this receipt signed by Wahn-Evans & Company: "We hereby acknowledge receipt of One Thousand Dollars ($1,000.00) payment as provided above."

It will thus be seen that both by the facts alleged in the amended bill of particulars and also by the terms of the written contract itself Wahn-Evans & Company held this deposit of $1,000.00 in trust not only for the seller, but also for the buyer-plaintiff under certain circumstances. It will also be observed that Wahn-Evans & Company was also under contractual obligation to the plaintiff to arrange for the financing of this purchase, and was also the plaintiff's broker, authorized to sell its Carlisle Avenue property for $20,000.00, and that as between the plaintiff and Wahn-Evans & Company the purchase of the Race Street property by the plaintiff was conditional upon the ability of Wahn-Evans & Company to sell the Carlisle Avenue property and arrange for the financing of the residue. Under such circumstances, it could not be seriously argued that Wahn-Evans & Company in accepting the deposit of $1,000.00 was not acting as a real estate broker in a transaction involving the transfer of real estate titles.

Turning now to the conditions of the bond, we find this set forth in §6373-35 GC, wherein it is provided that "Such bond shall be conditioned upon the faithful performance of all the provisions of this act and shall indemnify any person who may be damaged by a failure on the part of the applicant for a real estate broker's license to conduct his business in accordance with the requirements of this act. (Secs. 6373-25 to 6373-51.) Any person claiming to have been damaged by any misrepresentation or fraud on the part of a real estate broker or by reason of the violation of the terms of this act, may maintain an action at law against the broker—and

may join as parties defendant the sureties on the bond herein provided for."

By §6373-42 GC, it is provided the real estate broker's license may be revoked where the broker in acting as "a real estate broker or a real estate salesman or in any transaction involving the leasing or sale of an interest in real estate, is guilty of:

"(1) Knowingly making any misrepresentation, or,

"(2) Making any false promises with intent to influence, persuade or induce, or—

"(5) Failure within a reasonable time to account for or to remit any moneys coming into his possession which belongs to others.

"(6) Any other conduct, whether of the same or a different character than hereinbefore specified which constitutes dishonest conduct."

All told, there are twenty-four prescribed grounds for the revocation of a real estate broker's license.

Although the word "may" is used in §6373-42 GC, in conferring power to revoke the license, it is clear that should the board of real estate examiners, upon hearing, find that the agent had committed one of the acts constituting a ground for revocation, it could not do otherwise than pronounce the judgment of revocation, and such revocation would be on the ground that the agent had failed to observe the provisions of the act (§§6373-25 to 6373-51 GC) and such failure to observe the provisions of the act would likewise be a breach of the bond.

In Larson v. Marsh, 153 A. L. R. (—— Neb., ——, 14 N. W. (2d) 189) 101 at 106, it is said:

"The rule seems to be that where a public officer has been clothed by statute with power to do an act which concerns the public interest or the rights of third persons, the execution of the power may be insisted on as a duty, although the wording of the statute is permissive merely and not peremptory. We are of the opinion therefore that the statute imposes a positive duty upon the Secretary of State to perform the acts required by such statute when conditions exist which make the statute applicable."

We are of the opinion that the amended bill of particulars shows a violation of the condition of the broker's bond in two respects: (1) It alleges fraud in representing that

the broker could arrange the financing of the residue of the purchase price. We believe that misrepresentation or fraud as used in §6373-35 GC, must be construed in the light of §6373-42 GC, to include not only misrepresentation as to an existing fact, but also promissory misrepresentation made with intent to influence, persuade, or induce action. (2) We are of the opinion that the failure to account for or remit the $1,000.00 constituted a breach of the bond. In this connection it should be observed that according to the allegations of the amended bill of particulars Wahn-Evans & Company repeatedly promised to pay the plaintiff. The amended bill of particulars, therefore, excludes the idea of a bona fide dispute between the broker and the party claiming money due from him.

California has a real estate brokers' licensing law not unlike the Ohio law. The California law requires a bond conditioned for faithful performance of duty. Liability on such a bond was considered in the case of Clark v. Patterson and New York Indemnity Co., 75 A. L. R. (—— Cal. ——, 300 Pac. 967) 1124 in a case in which the facts bear a strong analogy to the facts in the case at bar. The syllabus, which we quote, is sufficient to disclose this analogy and the result of the application of the statute to the facts:

"The surety on a bond filed by a real estate broker under a statute requiring applicants for a broker's license to file a bond 'conditioned for the faithful performance by such broker of any undertaking as a licensed real estate broker', on which any person injured by the failure of the broker 'to perform his duties' shall have a right of action, is liable to one who, on agreeing to purchase property offered by the broker, placed money in the broker's hands to be applied on the purchase price, where through no fault of the purchaser the sale was never consummated, and the broker failed to return the money."

But it is urged that when the plaintiff paid the $1,000.00 to Wahn-Evans & Company, the title passed to its principal— the owner of the 1208 Race Street property. To reach this conclusion, it is necessary to ignore the express provision of the terms of the deposit as alleged in the amended bill of particulars. And to hold that this amended bill of particulars does not state a cause of action against Wahn-Evans & Company and General Casualty Company, it is necessary to ignore the allegations that it was the failure of Wahn-Evans & Company to arrange for the financing, as they had.

·agreed to do, that resulted in the necessary rescission of the contract. However, even though no specific agreement had been entered into by the broker and he had not been the cause of the failure to consummate the sale, he would be under an obligation to return the earnest money. In 8 Am. Jur., 1060 (Sec. 130) it is said:

"If earnest money is paid to a broker, and the contract is broken by the principal, the broker, notwithstanding that he has disclosed his principal, is liable to the other party for the return of the earnest money, unless he has in good faith paid it over to his principal."

The fact that the broker has a claim against his principal is no justification for his refusal to return the earnest money. Gosslin v. Martin, 56 Ore., 281, 107 Pac. 957.

Appellee's counsel relies strongly upon the case of **Stanson, Inc. v. McDonald, 147 Oh St, 191,** and we are advised that the trial court considered that case to require the sustaining of the demurrer. This reliance is not placed upon anything in the syllabus, which, of course. is the law of the case. The argument is based on what we regard as a misinterpretation of statements in the opinion of the court. It is true it is said in the opinion that a broker's surety may be held only for ex delicto acts of the broker, and that the action before the court was not based on any ex delicto act of the broker, but was an action ex contractu, that is, an action for money had and received, but when the facts of the case and the subsequent statements in the opinion are considered, there is no doubt as to the meaning of the court, and that meaning was that in the absence of misrepresentation or fraud, **or a violation of the terms of the act,** the surety was not liable, and that if there was misrepresentation or fraud, **or a violation of the terms of the act,** the surety was liable. This is demonstrated by the fact that the Court analyzed §5373-42 GC, to determine whether it had been violated by the defendant broker. The action was by an unlicensed broker to recover a share of a commission from another broker and the surety upon his bond. Not only did the defendant broker not violate the terms of the act by refusing to pay the unlicensed broker or agent, but if he had complied with the request to split his commission and made payment that would have violated the act. After quoting the pertinent parts of **§6373-42 GC,** the Court said:

"As §6373-47 GC, **supra,** forbids the splitting of a real estate commission with other than a licensed real estate broker and as S. D. Stanson, Inc., was not a licensed broker at the time the cause of action arose, we see no violation of §6373-42 **GC.** It is argued in substance that, under the finding the deal was a continuing proposition, McDonald's conduct was inequitable. However, conduct cannot be held inequitable which is forbidden by law."

It is clear that the court reversed the judgment in favor of the unlicensed agent solely because there could be no valid contract under the statute to split a commission with an unlicensed real estate broker or agent. The opinion clearly shows that the phrase "ex delicto" was used as a comprehensive phrase to include misrepresentation and fraud, and violations of the statute. Of course any violation of a statute no matter what the form, is a delict.

That there was no misunderstanding in the Supreme Court on this subject is shown by the ground upon which the two dissenting judges placed their dissent. They interpreted the facts to show that at the time the work was done by the plaintiff in the real estate transaction he was licensed, and having found that, then they reached the conclusion that the defendant broker violated §6373-42 **GC,** in refusing to split the fee and that, therefore, his surety was liable. They also were of the opinion that §6373-48 **GC,** denying a right of action to a real estate broker, without proof that he was licensed, was enacted solely for the protection of the property owner and not for the protections of brokers inter sese, and for that additional reason, they were of the opinion that the broker and his surety were liable to the unlicensed broker for a share of the commission. If the case was to turn on any arbitrary technical distinction between causes of action ex contractu and causes ex delicto, the minority opinion would have been based on immaterial and irrelevant differences.

For these reasons, the judgment is reversed and the cause remanded for further proceedings according to law.

HILDEBRANT & MATTHEWS, JJ., concur in syllabus, opinion and judgment.

ROSS, PJ.: (DISSENTING)

This is an appeal on questions of law from a judgment of the Municipal Court of Cincinnati dismissing the defendant the General Casualty Company of America from the action, a demurrer filed by that defendant to the amended bill of

particulars having been sustained by the court, and the plaintiff having stated it did not desire to plead further.

The essential averments of the amended bill of particulars are that the Casualty Company "is now and was at all times hereinbefore mentioned the surety on the real estate broker's bond" of its co-defendant, "that said bond was conditioned upon the faithful observance by Wahn-Evans & Company of all provisions of §§6373-25 to 6373-51 inclusive GC, that said surety has been informed of the continued course of misrepresentation, false promises and dishonest dealings of Wahn-Evans & Company, that when the seller rescinded its contract of sale with the plaintiff said Wahn-Evans & Company breached the conditions of its bond by failing to account for or to remit to the plaintiff its binder money in the amount of $1000.00, which plaintiff had deposited with it; that this suit is brought pursuant to §§6373-35 and 6373-42 GC."

These allegations are contained in the second cause of action of the amended Bill of Particulars, which, by reference, incorporates also the allegations of the first cause of action addressed to the defendant broker.

It appears from these latter allegations that the plaintiff gave the broker $1000.00 as earnest money and part payment of the purchase price of real estate in the sale of which the defendant broker was agent for the seller. This sale was not consummated owing to the failure of the broker to secure satisfactory financing for the plaintiff and the seller ordered the broker to return the $1000.00 earnest money to the plaintiff which he has failed to do after repeated demands by plaintiff.

The plaintiff alleges "the seller rescinded its contract with the plaintiff in writing and at the same time notified the defendant company of its action and instructed the defendant company to return to the plaintiff its binder money in the amount of $1000.00; that plaintiff made immediate demand upon the defendant company to return plaintiff's binder money; that defendant company promised upon several occasions to return the same; that notwithstanding defendant's promises as well as repeated demands on the part of the plaintiff said defendant has failed to account for or to remit to plaintiff its binder money and has followed a continued course of misrepresentation, dishonest dealing and false promises."

The contract of sale is attached to and made part of the amended bill of particulars and contains the following clause:

"I/we hereby accept the above proposition submitted to me/us by you, as my/our agent, and I/we hereby agree to pay you for your services rendered the rate of commission as established by the Cincinnati Real Estate Board, and I/we hereby authorize you, when this transaction is completed, to apply the above payment in your hands in connection therewith toward the payment of such commission.

WITNESS: The First English Evangelical Lutheran Church By Ralph A. Pott, Atty.

November 4, 1947

I/we hereby acknowledge receipt of One Thousand Dollars ($1,000.00), payment as above provided.

WAHN-EVANS & CO. (Name of Broker)

BY    /s/ Wynne A. Evans"

Now this deposit was obviously a payment to the seller The First English Evangelical Lutheran Church through its agent the defendant broker. It belonged to the seller subject to any contract existing with its agent the broker. Any claim for its return by reason of failure to consummate the transaction should be made against the seller. It is alleged that the seller has ordered the broker to return the money to the plaintiff, but this does not allege a contract requiring such performance, so that the plaintiff cannot rest its claim on a contract made for its benefit. It is apparent that the broker may have a claim upon this earnest money, which, although in the custody of the broker, belongs to the seller.

The simple facts alleged are that the plaintiff paid the seller a sum of money through the seller's agent, which the seller has ordered returned. This order to its broker does not relieve the seller of any obligation it may have to pay the plaintiff.

It is true that one of the derelictions of which a broker may be guilty, permitting revocation of his license, is "Failure within a reasonable time to account for or to remit any moneys coming into his possession which belong to others." If the seller has a legal right to order its broker agent to make repayment to plaintiff and the broker refuses so to do, the seller might well have the right herein asserted by plaintiff against both the broker and his surety.

No facts have been alleged showing that the specific $1,000.00 is in the broker's possession, and that it belongs to this plaintiff.

The broker has not failed to account to the plaintiff for anything that belongs to it.

The action involved here by virtue of the demurrer is a cause of action against the **surety** for **misconduct** of the broker.

The general conclusions of law found in the allegations in the cause of action against the surety are not supported by any factual allegations bringing the surety within the purview of the statutes. It is merely alleged that the surety "has been informed of **the** continued course of misrepresentations, false promises, and dishonest dealings" but there is no allegation of **the** facts sustaining these conclusions connecting this plaintiff with them.

In **Stanson, Inc., et al. v. McDonald, et al, 147 Oh St, 191, at page 198** of the opinion it is stated:

"Before recovery may be had against such surety it must be alleged and proved that the party complaining has been damaged by some misrepresentation or fraud on the part of the real estate broker or by reason of the violation of the terms of the act. No such allegation is contained in the amended petition upon which this case was tried. Plainly a broker's surety may be held only for ex delicto acts of the broker. Here attempt is made to hold the surety as for an ex contractu act of the broker, i. e., for money had and received. Neither of the lower courts found there was any misrepresentation or fraud on the part of McDonald or any violation by him of any term of the act. Neither do we find that there has been any violation of the terms of the act of McDonald to justify holding the bonding company. We are not unmindful of the fact that the State Board of Real Estate Examiners suspended McDonald's license issued January 1, 1942, the year following the matters herein complained of.

"**Sec. 6373-42 GC,** provides that the State Board of Real Estate Examiners may suspend or revoke or refuse to renew any license at any time 'where the licensee, in performing or attempting to perform any act as a real estate broker or real estate salesman or in any transaction involving the leasing or sale of an interest in real estate, is guilty of: * * *

"(5) Failure within a reasonable time to account for or to remit any moneys coming into his possession which belong to others, or

"(6) Any other conduct, whether of the same or a different character than hereinabove specified, which constitutes dishonest dealing.' "

It would be an unwarranted extension of liability under such a surety contract as is here involved to permit recovery

against the surety in every case where a broker in an endeavor to preserve his just claims refused to obey some order by his principal not warranted by the terms of the contract to which the seller, purchaser, and broker were parties.

The amended bill of particulars does contain allegations that the broker promises to return the money to the plaintiff, thus acknowledging the validity of his principal's order. The most that could be made of these allegations would be to justify an action for money had and received in favor of the plaintiff, exactly what in Stanson v. McDonald, supra, is held not to bring the surety within the purview of the acts.

It is true the plaintiff makes broad allegations of fraud and misrepresentation, but these are unsupported by factual allegations.

The Supreme Court, it will be noted, quotes the section of the statutes justifying cancellation of the broker's license and notes also that it was actually cancelled, but still the court does not recognize such provisions as being within the purview of the bond as applied to facts similar in effect to those herein involved.

Reference is made to the case of Clark v. Patterson, 75 A. L. R. 1124, and to the Annotation thereof, and to 6 A. L. R. page 645.

It may be that certain statutes might incorporate within the penalty of the bond a situation here presented. Evidently, our Supreme Court does not consider this accomplished by the present statutes in Ohio.

I am not unmindful of the cases of **Glens Falls Indemnity Co. v. Kirkpatrick, 46 Oh Ap, 23; Glen Falls Indemnity Co. v. Bradfute, 44 Oh Ap, 189; and Sigler v. Massachusetts Bonding & Ins. Co., 71 Oh Ap, 425,** all of which were decided without the advantage of the decision in **Stanson v. McDonald, 147 Oh St, 191,** decided December 4, 1946, which I consider to have overruled the conclusions reached by the Appellate Courts.

It is my conclusion that, giving the amended bill of particulars its fullest and most favorable construction to plaintiff, a cause of action was not stated against the surety and the demurrer was properly sustained and the judgment should be affirmed.