(No. 5223.   February 6, 1930.)

NORA O. KALLASH, Sometimes Known as NORA NAHA, Respondent, v. JOHN N. CLAAR and H. S. BEALS, Copartnership, Doing Business Under the Firm Name and Style of CLAAR–BEALS & COMPANY, J. E. MONTGOMERY, AMERICAN SURETY COMPANY OF NEW YORK, a Corporation, and STANDARD ACCIDENT INSURANCE COMPANY, a Corporation, Appellants.

[284 Pac. 1032.]

Walters, Parry & Thoman and J. R. Keenan, for Appellant Claar.

E. M. Wolfe and A. H. Nielson, for Appellants Montgomery and American Surety Company.

Bothwell & Chapman, for Respondent Kallash.

BUDGE, J.—Respondent brought this action against appellants to recover damages for alleged fraud and fraudulent representations growing out of an exchange of real property, and recovered judgment after trial of the cause to the court and jury. The parties directly concerned in the transaction were respondent, as the owner of land in Jerome, M. L. Beath, holder of a contract of purchase of real estate in Twin Falls, Claar-Beals & Company, a real estate firm of Twin Falls, and J. E. Montgomery, a real estate broker of Twin Falls. Appellants Standard Accident Insurance Company and American Surety Company were sued as sureties on real estate brokers' bonds posted by Claar-Beals & Company and Montgomery, respectively.

On or about July 18, 1925, Montgomery began negotiations with respondent looking to the exchange of her property in Jerome for that held by Beath in Twin Falls. The different properties were viewed by respondent and Beath, in company with Montgomery, who advised respondent the Twin Falls property was of more value than her property in Jerome, that a trade would be to her advantage, and that there was an incumbrance against the Twin Falls property

of $1100 which she should assume to clear the title. The evening of the same day, respondent went with Montgomery to the office of Claar-Beals & Company, whose office had been arranged to be kept open for that purpose, where an escrow agreement was drawn up by H. S. Beals and later signed by all the parties thereto, including Beath and wife and respondent and her husband. This agreement provided in material part that, whereas Beath had executed to respondent an assignment of his contract for the purchase of the Twin Falls property, "subject to an unpaid balance on a contract of purchase of $1100, . . . . which purchaser assumes," the consideration therefor being an exchange of such property for that owned by respondent in Jerome by delivery of a deed executed by respondent in favor of Beath, "and an abstract showing a merchantable title, free and clear of all incumbrance. Now, therefore, in consideration of the premises and the mutual promises of the respective parties herein contained, it is hereby agreed by and between said parties as follows: First. The deeds and contracts together with an executed copy of this agreement (which shall constitute the instructions to the escrow holder) shall be deposited in escrow with Claar-Beals & Co., of Twin Falls, Ida., until the abstracts have been continued and showing titles to be merchantable, and shall, except in case of default as hereinafter stated, remain there until the purchaser (respondent) shall have performed their obligations as above mentioned."

On July 20, 1925, while the escrow agreement was in force, and at which time it appears the statement with reference to the amount due on the contract of purchase of Beath covering the Twin Falls property was not true, and respondent's title to the Jerome property was defective, Beath conveyed the Jerome property to Montgomery and Beals, who shortly thereafter disposed of the same to one Webster. A letter was received by respondent, dated July 27, 1925, signed "Claar-Beals & Company by H. S. Beals," in which it was stated that Beath had accepted respondent's warranty deed for the Jerome property and resold the same, directing all documents held by "us" (Claar-Beals & Com-

pany) concerning the title to the Twin Falls property be delivered to respondent, "Thus dissolving the escrow." Inclosed was the assignment to respondent by Beath of the contract for the purchase of the Twin Falls property, together with a quitclaim deed from Beath to respondent. The Jerome property had been sold to Webster before the receipt by respondent of this letter, despite the fact that respondent's title had been pronounced to be "very defective," according to Beals, and the statement in the escrow agreement that an abstract should be furnished by respondent showing a merchantable title, free and clear of all incumbrances. Respondent then learned also that the incumbrance against the Twin Falls property was in excess of that represented, by some $250, including unpaid taxes which she had been told were paid; and it appears that prior to the initiation of the negotiations for the transfer of the Twin Falls property by Beath to respondent the former had been informed that his contract for the purchase of the property would be forfeited for failure to pay the taxes. The record further discloses that both Beath and respondent evidenced dissatisfaction with the arrangement for the transfer of their holdings, but that Montgomery and Beals persuaded Beath to convey the Jerome property to them for a consideration of $200, leaving respondent with a dubious right to the Twin Falls property, which was forfeited because of the excessive incumbrance against it and the manipulations of Montgomery and Beals in regard to the whole transaction. Thus, respondent found herself divested of her property, with nothing in return therefor, and by reason thereof seeks restitution in damages by this action.

██ Broker's real estate license was issued to Claar-Beals & Company July 25, 1925, after execution of a surety bond by appellant Standard Accident Insurance Company conditioned upon the licensee conducting its business without fraud or fraudulent representation, otherwise to pay to any party entitled thereto all damages, not exceeding $1,000 arising by reason of the fraud or fraudulent representation of said licensee, directly or indirectly. (See Sess. Laws 1921,

chap. 184, p. 378 et seq.) It is contended that liability on the bond for fraud or fraudulent representations of Claar-Beals & Company or Claar or Beals would attach only after the issuance of the license, that the representations relied upon were alleged to have been made prior thereto, and respondent may not therefore claim protection under the bond. We may agree that a bond does not take effect until delivered and accepted, indicated in this case by the issuance to Claar-Beals & Company of the real estate broker's license. And it is true that the conduct for which Claar-Beals & Company, and Claar and Beals individually, are accountable, did begin several days before the issuance of the license. What was thus begun, however, did not end until after the bond was in full force and effect, and the transaction is not divisible into componental parts from which it can be deter-mined that the fraud and fraudulent representations occurred wholly prior to July 25, 1925, the date of the issuance to Claar-Beals & Company of the real estate broker's license. We consider the complaint in its entirety as containing suffi-cient allegations to cover this point upon which may be sustained the finding of the jury, based upon substantial evi-dence.

■ Nor may Beals be allowed to escape liability by the hypercritical contention that, having with Montgomery taken a deed to the Jerome property on July 20, 1925, he was thereafter dealing with his own property and not as a real estate broker. The evidence is of sufficient import to show that Beals was acting in concert with Montgomery looking to their gain, and Beals secured in addition to a share of the spoils in the sale of the Jerome property to Webster the payment by Montgomery of a personal debt. It was while purporting to act for others and by reason of being brought into the transaction on such basis that the "per-sonal" interest was acquired. Beals and the firm of Claar-Beals & Company were within the purview of Sess. Laws 1921, chap. 184, sec. 4, defining a real estate broker as a person (including a partnership) who "for a compensation . . . . sells or offers for sale, buys or offers to buy, nego-

tiates or offers to negotiate, either directly or indirectly, whether as the employee of another or otherwise, the purchase, sale, exchange, lease or rental of real estate or any interest therein for others.''

Claar-Beals & Company was the holder of the escrow agreement, and the firm name was used in the letter sent to respondent, the language of which indicated firm action in the matter and demanded performance by respondent of the conditions of the escrow agreement. Claar was in the office of the company the evening the agreement was signed, and we think it not an unfair or violent presumption that he knew of that and later developments in the transaction and acquiesced in the actions of the firm in regard thereto. The law will not unravel a tangled web of fraud for the benefit of one through whose agency the web was woven and who has himself become enmeshed therein.

The application by Claar-Beals & Company for a real estate broker's license stated that the firm was a copartnership. The license issued entitled only one member or officer to sell real estate. A partner is an agent of the firm in all matters within the scope of the partnership business and may bind his partner or partners in such transaction as entirely as himself. (*Boise Payette Lbr. Co. v. Sarret*, 38 Ida. 278, 221 Pac. 130; *Bates v. Price*, 30 Ida. 521, 166 Pac. 261.) Under appropriate instructions the jury found by its general verdict that the firm of Claar-Beals & Company was a copartnership. There is sufficient competent evidence to sustain this finding, which being true it becomes unnecessary here to determine whether Claar and Beals were conducting their business as a common-law trust.

The jury were instructed that some of the defendants might be liable and others not, and they were not required to bring in a blanket verdict against all or none.

By Sess. Laws 1921, chap. 184, sec. 10, it is provided that the total aggregate liability of any surety under a bond of a licensed real estate broker shall not exceed the sum of

$1,000. The appellant sureties executed separate bonds for different parties; those parties are separately liable, and this is not a case where the obligation of the sureties is for the same person on the same debt so that they may claim joint liability. It may be understood, however, that the amount of liability of each surety under the judgment is limited to the amount of the bond given by each.

It is our opinion, after carefully considering all of the assignments of error of each of the appellants, that to uphold their contentions to the extent of requiring a reversal of the judgment would be to sacrifice substantial justice to formal technicality. We conclude that there was no prejudicial error in the judgment of the court below, and that the same should be affirmed when amended as to the liability of each of the sureties. It is so ordered. Costs to respondent.

Givens, C. J., and Lee and Varian, JJ., concur.

Petition for rehearing denied.