[Civ. No. 5304.   Third Appellate District.—May 24, 1935.]

HATTIE S. WALTON, Respondent, v. J. C. CARLY et al., Defendants; COMMERCIAL CASUALTY INSURANCE COMPANY (a Corporation), Appellant.

Butler, Van Dyke & Harris for Appellant.

Ralph H. Lewis for Respondent.

THOMPSON, J.—The Commercial Casualty Insurance Company, a corporation, has appealed from a judgment which was rendered against it in a suit on two surety bonds which were executed to secure the faithful services of the J. C. Carly Company and the Carly Investment Company, as real estate brokers.

In 1928 and 1929, the appellant, an insurance corporation, executed as surety, two bonds for the sum of $2,000 each, for the faithful performance of the J. C. Carly Company and the Carly Investment Company, as real estate brokers, under the provisions of· the California Real Estate Act for the licensing and regulation of brokers. (Stats. 1919, p. 1252, and amendments thereof, Act 112, 1 Deering's Gen. Laws of 1931, p. 25.) J. C.·Carly had been engaged in the real estate business in Sacramento since 1890. He was the manager and chief stockholder of both of the realty firms which are involved in this suit. The J. C. Carly Company was incorporated in 1910. The Carly Investment Company was incorporated in September, 1929. These companies cooperated in the operation of their real estate business. The J. C. Carly Company purchased from the plaintiff in 1910 ''Curtis Oaks'' subdivision of the city of Sacramento for $50,000, which was paid in instalments. Nearly all of this purchase money was left with the J. C. Carly Company in what was termed a "revolving fund" with instructions to invest and reinvest it in "good first mortgage loans". Mrs. Walton testified that she had known Mr. Carly for many years and that she had full confidence in his honesty, judgment and ability. She said: ''I dealt with Mr. Carly as representative of the company. . . . The moneys were loaned, as they were paid in they were reloaned.'' For several years the Carly Company handled this fund in that manner, making numer-

ous loans therefrom on real estate securities, collecting the principal and interest when due and crediting them to the plaintiff's account · on its books, and reinvesting the money when there were funds on hand. Sometimes the investments were mere book transactions of the renewal of existing mortgages. The real estate company charged the plaintiff commissions for each of these transactions. At first the plaintiff approved the various investments. Later she spent her time traveling abroad and she left these investments to the judgment of Mr. Carly, as a representative of the company in whom she had absolute confidence. Certain instalments of principal and interest were remitted to· her from time to time. Much of this fund remained in the custody of the J. C. Carly Company to be handled in the manner stated.

After purchasing the Curtis Oaks property from the plaintiff, the J. C. Carly Company organized another company, called the South Curtis Oaks Company, of which J. C. Carly was also the manager and chief stockholder. This property was conveyed to the last-mentioned holding company, and on March 31, 1928, it was reconveyed by trust deed to the California Trust & Savings Bank to secure a loan of $66,000. In September, 1928, lot number 127 of this mortgaged tract was sold to R. H. and Katie Febick, in part payment for which they executed a trust deed to the South Curtis Oaks Company to secure their promissory note of $4,400. This lot was not then released from the $66,000 mortgage on the entire tract held by the California Trust & Savings Bank. With full knowledge of this prior mortgage on the part of the officers of the J. C. Carly Company, the Febick note and trust deed were transferred to the plaintiff in consideration of the face value thereof on March 22, 1929, contrary to her instructions to invest her money only in "good first mortgages". The plaintiff had no knowledge of that irregular transaction. The South Curtis Oaks Company failed to pay its $66,000 note when it became due and foreclosure of the mortgage on the entire tract of land, including the Febick lot, was threatened. The plaintiff then for the first time learned that $4,400 of her money had been invested by the J. C. Carly Company, contrary to her instructions, in a second mortgage loan on the Febick lot. The plaintiff was compelled to, and on April 25, 1932, did pay the California Trust & Savings Bank the sum of $825 to release that prop-

erty from their first deed of trust, and to thus convert her Febick loan into a first mortgage security.

In March, 1925, the J. C. Carly Company, pursuant to its former agreement with the plaintiff, invested $2,400 of her money in a loan to E. S. and Florence M. Turpen, secured by a trust deed on their lot number 375 of "Homeland" subdivision of Sacramento. That loan was subsequently paid to the Carly Investment Company, without the plaintiff's knowledge, on April 26, 1930, and then appropriated to the use of the company. No part of the last-mentioned sum of money was ever paid to the plaintiff or credited to her account, but on the contrary it was appropriated by the Carly Investment Company.

The record contains many other transactions in which funds of the plaintiff were invested and reinvested by the Carly realty corporations for the plaintiff, which are not necessary to consider on this appeal. Subsequently the J. C. Carly Company and the Carly Investment Company failed, and were unable to meet their obligations.

This suit was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiff on all essential issues. Judgment for $2,850 and interest thereon was rendered against all of the defendants jointly. The Commercial Casualty Insurance Company, only, has appealed from that judgment.

■ As grounds for reversal of the judgment the appellant contends that the findings, to the effect that the Febick loan of $4,400 and the misappropriation of the $2,400 which was paid on the Turpen loan constituted violations of the employment of the Carly companies as real estate brokers, are not supported by the evidence; that the plaintiff was not damaged by the payment of the additional sum of $825 to release the Febick property from the first mortgage lien of the California Trust & Savings Bank for the reason that her security was ample to cover the original loan and the subsequent payment. It is also asserted that interest was erroneously allowed on the amount of the judgment from the date of the alleged misappropriation of funds, for the reason that no previous demand was made upon the surety company for reimbursement.

Considering the entire transaction by means of which the Carly companies were entrusted with a "revolving fund"

belonging to the plaintiff, to be used for investment and re-investment in "good first mortgage securities", we are of the opinion the two irregular transactions, for which the plaintiff was awarded damages in this action, constitute violations of the obligations of the companies as real estate brokers and render the sureties liable on their bonds.

A real estate broker is defined in the California Real Estate Act above referred to as "a person, copartnership or corporation who, for a compensation, sells or offers for sale . . . real estate, or *who for compensation, negotiates loans on real estate,* . . . "

The statute pursuant to which the bonds in this case were executed requires that they be "conditioned for the honest and faithful performance by such broker and his salesmen and employees of any undertaking as a licensed real estate broker . . . at any time when licensed under this act, and the strict compliance with the provisions of this act, *and the honest and faithful application of all funds received.* Said bonds shall be further conditioned upon the payment of all damages suffered by any person damaged or defrauded by reason of the violation of any of the provisions of this act, or by reason of the violation of the obligation of such broker as an agent as such obligations are laid down by the Civil Code of the State of California, or *by reason of any fraud connected with or growing out of any transaction* contemplated by the provisions of this act."

The entire transaction in which the plaintiff entrusted the Carly real estate firms with a "revolving fund" to be invested and reinvested for her in "good first mortgage securities", must be considered in determining whether the obligations of the companies, as brokers, were violated under the provisions of the California Real Estate Act. (*Democa* v. *Barasch,* 212 Cal. 293 [298 Pac. 17].) In the case last cited, a surety company was held to be liable on its broker's bond for the embezzlement of funds by a real estate agent which were paid to him incident to the transfer of a lease. The court said in that regard: "Having undertaken the exchange of said lease, with other incidental duties, the entire transaction must be viewed as a whole and regarded as coming within the act and the terms of the bond. The embezzlement of the above-mentioned sum by said defendant, therefore, constituted a breach of his obligation as a real estate broker

within the terms of the act, fixing liability upon defendant surety under the terms of said bond.'' (*Clark* v. *Patterson,* 213 Cal. 4 [300 Pac. 967, 75 A. L. R. 1124] ; *Muller* v. *John J. Davi & Bro.,* 131 Cal. App. 156 [21 Pac. (2d) 121].)

When the J. C. Carly Company invested the plaintiff's money in the $4,400 note and second deed of trust on the Febick lot, knowing that it had previously executed a deed of trust on the entire ''Curtis Oaks'' tract of land, including the lot in question, to secure a $66,000 loan from the California Trust & Savings Bank, the Carly Company violated its obligation to loan the plaintiff's money only on ''first mortgage securities''. This was certainly a breach of its obligation as a real estate broker to ''honestly and faithfully'' *negotiate loans on real estate.* For a broker to accept a client's money for the express purpose of negotiating a loan on first mortgage security, and then appropriate the money to his own use without security, is certainly a breach of his obligation as a real estate broker. To the extent of the $825, which the plaintiff was compelled to pay the bank to release the lot from its prior mortgage lien and give to her a good first mortgage to secure her loan, she was damaged by the conduct of her agent, and to that extent she is entitled to recover in that transaction upon the bond of her agent's surety.

Nor may it be reasonably or equitably said that she was not damaged by that transaction because she held a trust deed on the property which will be deemed to furnish her ample security to also cover the added sum of $825 which she was compelled to pay. There is no evidence to indicate that she held security sufficient to cover the original loan and the subsequent payment of $825, or that the terms of the trust deed cover the last-mentioned sum.

So, also, it was a violation of the obligations of the Carly Investment Company to appropriate to its own use the Turpen loan of $2,400 which was paid to that company to be reinvested for the plaintiff. That was a clear violation of the provision of the statute which requires a broker to make an ''honest and faithful application of all funds received'' for investment in real estate securities.

It is properly conceded the court erroneously allowed interest on the amount of the judgment rendered against the surety company on account of the misappropriation of the

Turpen loan of $2,400, for the reason that it appears no previous demand for the return of this money was made by the plaintiff until the commencement of this action. The court said in the case of *Democa* v. *Barasch,* 212 Cal. 293 [298 Pac. 17], in that regard:

"The court allowed interest at the legal rate from the date of defalcation. Inasmuch as the full penalty of the bond is decreed, interest should not begin until after demand. (*Trumpler* v. *Cotton,* 109 Cal. 250, 256, 257 [41 Pac. 1033].) The filing of the original complaint is the only definite date the record fixes as the time of such demand."

There appears to be nothing in the case of *Schomig* v. *Keiser,* 189 Cal. 596 [209 Pac. 550], or *Kelly* v. *Ward,* (Cal.) 2 Fed. Supp. 37, upon which the appellant relies, in conflict with what we have heretofore said regarding the facts of this case. In the Schomig case, which was a petition for a writ of *certiorari* to review the action of the real estate commissioner in revoking a broker's license, the court said:

"There is no charge in the complaint, and no evidence to prove the charge if it were in the complaint, that Schomig was employed *for a compensation* to do the acts complained of, or that the acts themselves constituted a part of a contract for the sale of real estate."

The transaction complained of in that case was the appropriation of rent which was collected independently of the broker's contract to procure a sale of real property. In the present case there is no question that the realty companies were paid commissions for each investment of the plaintiff's money according to agreement, and that they secured the money which was misappropriated only for the purpose of investment and reinvestment in good first mortgage securities. The present case is clearly distinguishable from the Schomig case in that regard.

In the case of *Kelly* v. *Ward, supra,* upon which the appellant also relies, the United States District Court held that a surety bond was not liable for the defalcations of a broker who had been separately employed by a client to make collections of certain loans. The court said: "Plaintiff employed Ward to make collections on these loans." It is then stated: "These collections were not made by Ward in his capacity of real estate broker but in his capacity of agent and trustee of plaintiff." In the present case, however,

the plaintiff's money was left with the Carly companies to be invested and reinvested in first mortgage securities. But if the *Kelly* v. *Ward* case be deemed to be in conflict with what we have previously said regarding the violation of the Carly companies obligations as real estate brokers, then we are not in accord with that decision.

The judgment is modified by striking therefrom the provision for interest to be computed prior to the time of filing of the complaint in this action, which was September 14, 1932. As so modified, the judgment is affirmed, respondent to recover costs on appeal.

Pullen, P. J., concurred.