449 P.2d 71

**ARIZONA REAL ESTATE DEPARTMENT, Appellant,**

v.

**ARIZONA LAND TITLE AND TRUST COMPANY, an Arizona corporation, Appellee.**

**No. 2 CA–CIV 499.**

Court of Appeals of Arizona.

Dec. 24, 1968.

Rehearing Denied Feb. 20, 1969.
Review Denied March 25, 1969.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., H. J. Lewkowitz, Special Asst. Atty. Gen., for appellant.

Boyle, Bilby, Thompson & Shoenhair, by Michael A. Lacagnina, Tucson, for appellee.

MOLLOY, Judge.

A superior court order directing payment of $10,000 to the appellee from the Real Estate Recovery Fund pursuant to A.R.S. § 32–2188 is challenged by the Arizona Real Estate Board in this appeal. The order arises in a civil action brought against a real estate broker for misappropriation of the moneys paid to satisfy a mortgage, held in the broker's name, but assertedly placed by the broker for his clients. The plaintiff is a title insurance company which was required to make the same payment again, in order to protect its insureds from loss.

The Real Estate Board was given notice of the instigation of the civil action in accordance with the controlling statute,[1] but did not intervene in the action. After the plaintiff secured default judgment against the broker, an application was made to the court for an order to charge the Real Estate Fund with the payment of the judg-

1. A.R.S. § 32–2188, subsec. A.

ment up to the extent of $10,000, the judgment being in excess of that amount.

■ The Board's response to the application set forth three grounds in opposition. One ground, noncompliance with A.R.S. § 32–2188, subsec. C(7), although assigned as error has not been argued on appeal and therefore we deem it abandoned. Mozes v. Daru, 4 Ariz.App. 385, 420 P.2d 957 (1966).

The other two grounds raise the question of whether the acts upon which the judgment was based were such as to bring the judgment within the indemnity provisions of this legislation, i.e., whether they occurred on or after July 1, 1964, and whether they were the acts of a licensed real estate broker. The first defense made of the order entered below is that, by failing to intervene in the original civil action against the broker, the Board precluded itself from raising these questions. This requires an analysis of the procedural aspects of the subject statute.

■ The instant case is the third appeal taken to this court within a brief period of time from superior court orders directing such payments to be made.² We detect, from the procedural postures of the three appeals taken to this court, that there is considerable uncertainty as to the time and mode of determination of whether a particular loss is compensable from the Real Estate Fund. In State ex rel. Talley v. Jones, 8 Ariz.App. 173, 444 P.2d 730 (1968), we seemed to indicate that this issue should be resolved in the plenary action against the defendant-realtor (see 444 P.2d 732). On reflection, we are convinced that this is not the intent of the subject statute and that ordinarily the binding effect of the plenary action upon the liability of the compensation fund will be limited to the

fact and the amount of the broker's liability, but not as to whether the claim giving rise to that liability is one falling within the provisions of this Act.³

A.R.S. § 32–2188 (as amended) provides, in pertinent part:

"A. * * * When any aggrieved person commences action for a judgment which *may* result in collection from the real estate recovery fund, the aggrieved person shall notify the real estate board in writing to this effect at the time of the commencement of such action. The real estate board shall have *the right to intervene* in and defend any such action.

"B. When any aggrieved person recovers a valid judgment in any court of competent jurisdiction against any real estate broker, real estate salesman, *for any act, representation, transaction, or conduct which is in violation of the provisions of this chapter* or the regulations promulgated pursuant thereto, *which occurred on or after July 1, 1964,* the aggrieved person may, upon the termination of all proceedings, including reviews and appeals in connection with the judgment, file a verified claim in the court in which the judgment was entered and, upon ten days' written notice to the real estate board, may apply to the court for an order directing payment out of the real estate recovery fund, of the amount unpaid upon the judgment, subject to the limitations stated in this section.

"C. The court shall proceed upon such application in a summary manner, and, upon the hearing thereof, *the aggrieved person shall be required to show:* * * * 3. He has obtained a *judg-*

2. State ex rel. Talley v. Jones, 8 Ariz. App. 173, 444 P.2d 730 (1968); State v. Griswold, 8 Ariz.App. 361, 446 P.2d 467 (1968).

3. The result in State ex rel. Talley v. Jones, supra, is still correct, however, as the problem presented is one of pro-

cedure, not jurisdiction. In *Jones*, the question of the Fund's liability was actually litigated in the plenary action, and having submitted itself to the adjudicative processes of the court, the State is bound by the decision. See In re Riccomi's Estate, 185 Cal. 458, 197 P. 97, 14 A.L.R. 509 (1921).

*ment as set out in subsection B* of this section, * * *.

* * * * * *

"E. The court shall make an order directed to the real estate board requiring payment from the real estate recovery fund * * * *if the court is satisfied, upon the hearing, of the truth of all matters required to be shown by the aggrieved person* by subsection C of this section * * *." (Emphasis added)

In attempting to implement this statute, trial courts are immediately faced with the problem of deriving from its verbiage the legislative intent as to the result intended when the Real Estate Board either exercises or fails to exercise its "right to intervene" in the plenary action against a real estate licensee. We find clues to this intent in the words "right" and "intervene." The former has more connotation of privilege than duty. The latter is a word with a well-established meaning in our procedural law.

■ An intervenor takes a case as he finds it, Pintek v. Superior Court, 78 Ariz. 179, 277 P.2d 265 (1954); 67 C.J.S. Parties § 70, and is not permitted to enlarge the scope of the proceeding or raise new issues, thereby retarding the process of the main action. Succession of Delesdernier, 184 So. 2d 37 (La.App.1966); Mondale v. Commissioner of Taxation, 263 Minn. 121, 116 N. W.2d 82 (1962); State ex rel. State Farm Mutual Auto. Ins. Co. v. Craig, 364 S.W.2d 343 (Mo.App.1963); Barnett v. Bodley, Okl., 348 P.2d 502 1959); Jackson v. Bd. of County Comm'rs for Pennington County, 76 S.D. 495, 81 N.W.2d 686 (1957). In the suit against the real estate broker or salesman, it is immaterial whether the factual predicates for recovery against the Fund have occurred; we do not believe that this statute, permitting intervention, mandates that these issues, completely collateral to that plenary action, be injected into it.

■ Nor do we believe that the language of subsection C, "[t]he court shall proceed * * * in a summary manner * * *" negates the conclusion that issues involving the liability of the Fund are not to be determined in the plenary action. The term "summary manner" means only that the court proceed without delay or formality in a short, concise, and immediate proceeding.[4] Williams v. Motor Vehicle Accident Indem. Corp., 49 Misc.2d 972, 268 N.Y.S.2d 837 (1966); Joseph v. City of Austin, 101 S.W.2d 381 (Tex.Civ.App. 1936). See also In re Wells' Estate, 187 Or. 462, 212 P.2d 729 (1949); State ex rel. Daugherty v. Rose, 167 Tenn. 489, 71 S.W. 2d 685 (1934); Cox v. Dixie Power Company, 81 Utah 94, 16 P.2d 916 (1932). The legislature did not intend diminution of rights by the summary nature of the proceeding but rather sought to achieve expedition. Bergen County v. S. Goldberg & Company, 39 N.J. 377, 189 A.2d 4 (1963).

■ Subsection E of A.R.S. § 32–2188 authorizes the court to order payment, if, at the hearing on the application for such order, " * * * the court is satisfied * * * of the truth of all matters required to be shown by the aggrieved person by subsection C of this section * * *." One of the matters required to be shown is that the aggrieved person has obtained " * * * a judgment *as set out in subsection B* of this section * * *." (Emphasis added.) Thus, we see that it is not *any* judgment against a real estate broker which is compensable from the Real Estate Fund, but only the type of judgment specifically described in subsection B. See Continos v. Parsekian, 68 N.J.Super. 54, 171 A.2d 663 (1961); Tschider v. Burtts, 149 N.W.2d 710 (N.D.1967); Pearson v. State Unsatisfied Judgment Fund, 114 N.W.2d 257 (N.D. 1962).

■ By particularizing the requirement that the Board be notified of the pendency of the principal action, we believe

---

4. The California statutory counterpart, Business and Professions Code § 10472, provides that the court proceed upon such application within 30 days after service of the required notice to the Real Estate Commissioner.

that the legislature intended, however, that the original action have some binding effect upon the Fund. Public policy favors a minimum of litigation, and it is our view that the legislature intended that the Board be precluded from questioning the amount and fact of liability of the realtor as established in the principal action after it should fail to exercise its right to intervene or after it should intervene and be unsuccessful in its attempted defense of that action. The petitioner is only required to prove that he has obtained a valid *judgment*, not that the judgment is based on valid grounds. Hence, absent jurisdictional defects, it is our view that only when the Real Estate Board intervenes in the principal action can it question the propriety of the judgment against the broker or salesman.

■ In this action, the Board is not attempting to controvert the liability of the broker, but only to argue that the judgment obtained was not one of those protected under this Act. This it was not foreclosed from doing by its failure to intervene.

■ We now address ourselves to the question of whether the petitioner sufficiently satisfied the statutory requirement that he "show" that this judgment was obtained on the basis of conduct which (1) occurred after July 1, 1964, and (2) was that of a real estate broker acting as such. The statute does not delineate the mode of proof but, we believe, by analogy to motion practice, affidavits may suffice, Lincoln-Mercury-Phoenix, Inc. v. Base, 84 Ariz. 9, 322 P.2d 891 (1958), or the court, in its discretion, may permit the reception of oral testimony. Skouland v. Skouland, 201 Cal.App.2d 677, 20 Cal.Rptr. 185 (1962); Theriault v. Theriault, 104 N.H. 326, 184 A.2d 459 (1962); 60 C.J.S. Motions and Orders § 37e(2).

We consider first whether the broker was acting as such in converting the money. At

the time in question, A.R.S. § 32–2101 provided in pertinent part:

"In this chapter, unless the context otherwise requires:

"1. 'Broker' or 'real estate broker' means a person, other than a salesman who, for another, for compensation or other valuable consideration, or with the intent, in the expectation, or upon the promise of receiving or collecting compensation or other valuable consideration:

\* \* \* \* \* \*

"(c) Negotiates, or offers, attempts or agrees to negotiate a loan secured or to be secured by a mortgage or other encumbrance upon or transfer of real estate."

10 A.R.S. § 32–2100, as amended.

■ The State contends that the broker was not acting "for another" but rather was acting on his own behalf. Offered in support of this contention is the fact that the note and mortgage involved in the loan transaction were executed in favor of the broker. We do not believe that this necessarily means that the broker was negotiating on his own behalf rather than as a real estate broker if, in fact, the loan transaction was effected while he was acting for others. Kallash v. Claar, 48 Idaho 714, 284 P. 1032 (1930); Victor v. Lewis, 157 So. 293 (La.App.1934).

The uncontradicted evidence from the broker's deposition in another lawsuit, stipulated into this record, contains ample support for the petitioner's contention that this construction mortgage was placed in the name of the broker's realty corporation for convenience only, and that the broker in negotiating and placing this loan was acting as a real estate broker on behalf of his clients.[5] There remains the question of

5. Some of the pertinent portions of this deposition are:

"Q Would it be fair to say you acted in the capacity of a broker with them [the Gordons] in investing monies for them?

"A. Right.

\* \* \* \* \*

"Q Now, you say returned to them and reinvested. Could you tell us the mechanics on how you handled that for

60

whether the broker was acting in his capacity as a broker in·receiving the loan payoff.[6] Our statute does not specifically define such conduct as that of a real estate broker. In other jurisdictions, notwithstanding such lack of statutory definition, a broker has been held to be acting as such when collecting moneys on sales, rentals, and loans. See, e. g., Walton v. Carly, 7 Cal.App.2d 183, 45 P.2d 438 (1935); Muller v. John J. Davi & Brothers, 131 Cal.App. 156, 21 P.2d 121 (1933); Nittler v. Continental Casualty Company, 94 Cal. App. 498, 271 P. 555 (1928), rehearing denied, 272 P. 309 (1928); Liuzza v. Stassi, 83 So.2d 400 (La.App.1955); Lawyers Surety Corporation v. Ladue, 358 S.W.2d 714 (Tex.Civ.App.1962). Contra, Kelly v. Ward, 2 F.Supp. 37 (D.C.Calif. 1932), and Schomig v. Keiser, 189 Cal. 596, 209 P. 550 (1922); cf. Buckley v. Savage, 184 Cal.App.2d 18, 7 Cal.Rptr. 328 (1960).

Our statutes supervising and regulating the real estate business are remedial in character, thus requiring liberal construction to accomplish their purpose. Metropolitan Casualty Company of New York v. Billings, 150 Conn. 603, 192 A.2d 541 (1963); Maddy v. Jones, 230 Md. 172, 186 A.2d 482 (1962); Serkes v. Parsekian, 73 N.J.Super. 344, 179 A.2d 785 (1962).

This was a short-term loan and the broker handled the entire transaction from start to finish, i. e., from making the preliminary arrangements to the final payoff. His receipt of the money to pay off this mortgage was directly incidental to the activity he was conducting for his clients as a real estate broker and we believe this sufficient to bring such conduct within the purview of this Act.

As to the date of occurrence, the only evidence to be gleaned from this scanty record is that, sometime in the early part of 1965, a demand was made by the clients upon the broker for the $20,490.02 paid on this mortgage, at which time the broker declared he had previously misappropriated these funds. The unverified complaint filed by the appellee alleged that the payoff check was delivered to the broker on or about the 6th day of May, 1964. The appellee's position is that the real estate broker's act in violation of the statutory provisions regulating real estate brokers occurred after July 1, 1964, because the

the Gordons? Mechanically, what steps?

"A Set it up in an escrow account under our corporation and when the loan was paid off, either by maybe a bank or title company or whoever might have the source for either the sale of the property or refinancing of the property, then we would, in turn, furnish them a payoff statement showing the principal and interest due the Gordons and then they would pay us as escrow agent and we would, in turn, clear the check and pay the Gordons.

"Q Now, was this the same procedure that you followed with regard to the mortgage and short-term note and mortgage executed by Jack D. Moore and Joan Moore?

"A Yes.
* * * * *
"Q Mr. Frannea, in your dealings in mortgages, almost invariably the mortgage was made to your company, was it not?

"A Well, to speed up the processing we did it in quite a few cases, to get the thing of record and the builder could get started immediately. Then I would go ahead and proceed to assign it to the client that had made the commitment to make the mortgage."

6. Were we dealing with California's comparable statute, we would have no problem of construction. Business and Professions Code § 10131 contains the following as one definition of a "broker":

" * * * a person who, for a compensation * * * does or negotiates to do * * * for another * * *:
* * * * *
"(d) Solicits borrowers or lenders for or negotiates loans or *collects payments* or performs service for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property. * * * " (Emphasis added). As amended Stats. 1961, c. 886, at 2324 § 4. Prior to this amendment, the California Statute was substantially the same as our § 32–2101.

demand for the money and refusal to pay it occurred subsequent to that date. It is true that, for purposes of commencement of the statute of limitations, as to a conversion action, the date of such demand and refusal may be treated as the date of conversion where demand and refusal are relied on to show a conversion. 89 C.J.S. Trover and Conversion § 61a.

█ Here, however, we are not dealing with the common law action for conversion but rather a statutory remedy which requires proof that the misappropriation (that which is in violation of the Real Estate Act) occurred on or after July 1, 1964. The only showing made by the record here is that such misappropriation occurred sometime between May 6, 1964, and early 1965. General knowledge of the business world would suggest that the money should have been paid over to the clients soon after receipt; there is nothing in the record to make it probable that the defalcation occurred after July 1, 1964. We hold, therefore, that this evidentiary lack as to the date of occurrence invalidates this judgment.

While ordinarily appellee's failure to sustain its burden of proof would be fatal, Shetter v. Rochelle, 2 Ariz.App. 607, 411 P.2d 45 (1966), we believe that dictates of fairness require remand for another hearing on the appellee's application. The hearing on the petition to secure an order against the Fund was conducted very informally. The trial court, at the time of the hearing, expressed doubts as to the propriety of presentation of evidence and then indicated that, if more testimony were required to determine the application, the parties would be so informed. The appellee indicated that it was able to support its claim with further evidence but was never given an opportunity to do so.

Judgment reversed and remanded for a new hearing on the issue of whether this misappropriation occurred after July 1, 1964.

HATHAWAY, C. J., and KRUCKER, J., concur.