PAUL TOUFEXIS, Plaintiff-Appellee, v. WILLIAM HUGHES, d/b/a Hibbard Business Brokers, *et al.*, Defendants (The Department of Registration and Education, Defendant-Appellant).

Second District   No. 84—0779

Opinion filed November 6, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks and Rosalyn B. Kaplan, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Timothy R. McNamee, of McNamee & Mahoney, Ltd., of Dundee, for appellee.

JUSTICE STROUSE delivered the opinion of the court:

The Illinois Department of Registration and Education (Department) appeals from an order of the trial court that ordered the Department to pay the plaintiff, Paul Toufexis, certain sums of money from the Real Estate Recovery Fund (Fund) in the form of damages ($7,000), accrued interest ($1,699), costs of suit ($1,107), and attorney fees ($1,470.90).

The Department appeals and raises two alternative assignments of error in this court. Since we hold that the plaintiff was not entitled to payment from the Fund due to his failure to comply with the notice requirements of the controlling statute (Ill. Rev. Stat. 1981, ch. 111, par. 5718), it is unnecessary for us to consider the alternative issue.

On March 18, 1981, the plaintiff filed a complaint against William Hughes, d/b/a Hibbard Business Brokers, and Joseph Szatkowski, d/b/a Joe's Place. Hughes is a licensed real estate broker, while Szatkowski is the owner of a tavern the plaintiff sought to purchase. Subsequently, the court added HBB, Incorporated (formally known as Hibbard Business Brokers) as a party defendant. The complaint sought the recovery of $10,000 earnest money the plaintiff entrusted to Hughes as escrow agent. No notice was given to the Department at the commencement of this action.

The trial court granted the plaintiff's motion for summary judgment against Hughes and HBB, Inc., in the amount of $10,000 plus

costs representing earnest money, purportedly held in a trust account to be returned to plaintiff.

In October 1981, the plaintiff collected the sum of $3,050 in partial satisfaction of the judgment. Later that month the plaintiff learned that Hughes had filed for bankruptcy both as an individual and in behalf of his corporation and was subsequently discharged by the Federal Bankruptcy Court from the $10,000 judgment the trial court had originally entered against him.

The plaintiff then filed an unverified motion for payment from the Fund on December 21, 1983, and a notice of that motion to certain individuals. The Department did not receive notice until January 24, 1984.

On March 26, 1984, the plaintiff filed a verified amended motion for payment from the Fund which included the affidavits of the plaintiff and his attorney. That same day the Department moved to dismiss the suit. The court denied the Department's motion to dismiss on May 2, 1984. The plaintiff moved for summary judgment on July 1, 1984. Later that month the court awarded the plaintiff the $7,000 that remained unpaid from the original $10,000 judgment; accrued interest in the sum of $1,699; costs of suit in the amount of $1,107; and an additional award of attorney fees in the sum of $1,470.90, which constituted 15% of the combined total ($9,806) of the three other amounts from the Fund.

The Real Estate Brokers and Salesmen License Act (Act) (Ill. Rev. Stat. 1981, ch. 111, par. 5701 *et seq.*), as it existed at the time the plaintiff filed his original complaint against Hughes and the HBB, Inc., contained provisions governing the establishment, application, and use of the Real Estate Recovery Fund (Ill. Rev. Stat. 1981, ch. 111, pars. 5716 through 5725). In passing, we note that the Real Estate License Act of 1983 (Ill. Rev. Stat. 1983, ch. 111, par. 5801 *et seq.*), which took effect on January 1, 1984, includes similar provisions relating to the use of the Fund (Ill. Rev. Stat. 1983, ch. 111, pars. 5823 through 5830).

The Department's principal contention is that the plaintiff is not entitled to recover from the Fund because he failed to comply with the notice requirements of section 8.3 of the Act (Ill. Rev. Stat. 1981, ch. 111, par. 5718), thereby waiving his rights (Ill. Rev. Stat. 1981, ch. 111, par. 5723). In particular, the Department maintains that the plaintiff failed to give it notice of his underlying lawsuit against Hughes and HBB, Inc. as section 8.3(a) of the Act mandates (Ill. Rev. Stat. 1981, ch. 111, par. 5718(a)).

Section 8.3(a) of the Act provides that when any person who is

aggrieved as a result of the conduct of a real estate broker commences an action "for a judgment which may result in collection from the Real Estate Recovery Fund, the aggrieved person *shall* notify the Department in writing to this effect at the time of the commencement of such action." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 111, par. 5718(a).

Section 8.3(b) prescribes that when the aggrieved individual recovers a valid judgment against a real estate broker, the holder of the judgment "*may* *** file a verified claim in the court in which the judgment was entered and, upon 30 days written notice to the Department, *** may apply to the court for an order directing payment out of the Real Estate Recovery Fund, of the amount unpaid from the judgment, subject to the limitations stated in this Section." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 111, par. 5718(b).) However, before that person may recover from the Fund, the claimant must prove compliance with six enumerated conditions, including "all the requirements of this Section." (Ill. Rev. Stat. 1981, ch. 111, par. 5718(b); *Jones v. Anderson* (1978), 62 Ill. App. 3d 284, 288.) Where the applicant for recovery from the Fund fails to meet one of the conditions precedent to recovery, he or she is precluded from recovering from the Fund. (See, *e.g., Buonincontro v. Kloppenborg* (1978), 61 Ill. App 3d 1041, 1043.) Once the court is satisfied that the aggrieved person has truthfully established compliance with all the requirements set forth in section 8.3(b), then the court shall enter an order directing the Department to make payment from the Fund in whatever sum the Department finds the claim to be, as long as the amount falls within the monetary limitations of the Act. Ill. Rev. Stat. 1981, ch. 111, par. 5718(c).

■■ It is manifest that the sections of the Act that govern the Fund constitute a substantial departure from the common law. Statutes in derogation of the common law are not regulatory in nature and must be construed strictly with nothing to be read into them by intendment or implication. *Buonincontro v. Kloppenborg* (1978), 61 Ill. App. 3d 1041, 1043.

■ Because we are unable to find Illinois authority which has specifically construed the written notice requirement, we must advert to case law from foreign jurisdictions whose statutes are similar to section 8.3 of our Act. (Ill. Rev. Stat. 1981, ch. 111, par. 5718.) These cases have found that when the principal action is commenced against the real estate broker, the statute requires the plaintiff to notify the Department in writing. (*Real Estate Board v. Dalessandro* (1972), 17 Ariz. App. 181, 183, 496 P.2d 607, 609; *Arizona Real Es-*

*tate Department v. Arizona Land Title & Trust Co.* (1968), 9 Ariz. App. 54, 58-59, 449 P.2d 71, 75-76; *D'Occhio v. Connecticut Real Estate Com.* (1983), 189 Conn. 162, 168, 455 A.2d 833, 837.) This finding is not only based upon a strict construction of the statute but also is evident by the legislative intent. Section 8.6 authorizes the Department, upon receiving notice, to take certain specified actions in the trial court "on behalf and in the name of the defendant." (Ill. Rev. Stat. 1981, ch. 111, par. 5721.) It follows then that since the Act allows the Department to intervene, the written notice requirement of the underlying suit to the Department is an essential first step. In addition, by placing the word "shall" under section 8.3(a) it further evidences the legislature's intent that the Department be given notice at the onset. (Ill. Rev. Stat. 1981, ch. 111, par. 5718(a).) Additionally, whether the Department exercises its right to intervene or whether it intervenes unsuccessfully in defense of the original action, it is clear that by particularizing the requirement that the Department be notified of the pendency of the principal action, the legislature intended that the original action have some binding effect upon the Fund. (*Real Estate Board v. Delassandro* (1972), 117 Ariz. App. 181, 183, 496 P.2d 607, 609; *Arizona Real Estate Department v. Arizona Land Title & Trust Co.* (1968), 9 Ariz. App. 54, 59, 449 P.2d 71, 76; see *D'Occhio v. Connecticut Real Estate Com.* (1983), 189 Conn. 162, 174-75, 455 A.2d 833, 839.) Therefore, in light of the fact that the plaintiff's underlying lawsuit against the real estate broker is a prerequisite to securing a recovery from the Fund and that the Department is bound by the results of that lawsuit, whether it intervened or not, the statute mandates that the Department receive written notice of the initiation of that action. *D'Occhio v. Connecticut Real Estate Com.* (1983), 189 Conn. 162, 174, 455 A.2d 833, 839.

It is true that not every case that is brought against a broker for the misappropriation of funds entrusted to his or her care necessarily entails recovery from the Fund. For example, the lawsuit may be settled, the broker may defend the suit successfully, or the realtor may satisfy fully any judgment against him or her. Because unproductive intervention wastes the resources of the Department, its efforts should be restricted to cases which will result in claims against the Fund. See *D'Occhio v. Connecticut Real Estate Com.* (1983), 189 Conn. 162, 175, 455 A.2d 833, 839; note, 56 Chi-Kent L. Rev. 401, 421-22 (1980).

Relying upon two criminal cases that have construed "may" and "would" as synonymous (*People v. Powell* (1982), 107 Ill. App. 3d

418, 420; *People v. Malloy* (1980), 83 Ill. App. 3d 344, 347), the plaintiff erroneously argues that the word "may" in section 8.3(a) ("a judgment which may result in collection from the *** Fund") should be interpreted as "would." Based upon his interpretation of the statute, the plaintiff concludes that notice is not required until it becomes apparent that the real estate broker cannot satisfy a judgment. The plaintiff concludes that he was not required to give the Department notice of the lawsuit until late in 1983, when it became clear that he would be unable to recoup his $10,000 earnest money from the real estate broker. Such an interpretation of the statutory language is unreasonable and would render the notice requirement a virtual nullity, for a plaintiff normally would not have sufficient knowledge at the initial stage of the litigation to determine whether he would or would not be able to collect damages from the realtor.

Section 8.3(b) of the Act obligates the plaintiff to establish that he complied with the requirements of section 8.3, including the notice provisions of section 8.3(a) (Ill. Rev. Stat. 1981, ch. 111, par. 5718). Also, section 8.3(c) requires that the trial court be satisfied the plaintiff complied with all those requirements before ordering the Department to make payment from the Fund. (Ill. Rev. Stat. 1981, ch. 111, par. 5718(c).) Furthermore, section 8.8 expressly states that the applicant's failure to comply with the Fund provisions of the Act shall constitute a waiver of that person's right under the Act. (Ill. Rev. Stat. 1981, ch. 111, par. 5723.) In light of those clear statutory pronouncements, as well as the principle that the statutory language must be construed strictly, we hold that the plaintiff has waived his right to recover from the Fund due to his failure to satisfy the statutory notice requirement.

The judgment of the court of Kane County is reversed.

Reversed.

NASH, P.J., and REINHARD, J., concur.