CANDIDO D'OCCHIO ET AL. *v.* CONNECTICUT REAL ESTATE COMMISSION (10436)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and GRILLO, Js.

Argued November 4, 1982—decision released February 8, 1983

*Timothy O. Fanning,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant-cross appellee (defendant).

*Joseph A. O'Brien,* for the appellees (named plaintiff et al.) and cross appellant (plaintiff Perlman).

PARSKEY, J.   The plaintiffs, Candido D'Occhio, Donato Gaetani and Bertram Perlman, by writ, summons and complaint dated March 5, 1975, after due notice to the defendant commission, brought suit against William Braman Pease alleging that Pease, as a real estate salesman for Florida

Unlimited, Inc., a real estate broker licensed to do business in the state of Connecticut, had appropriated substantial sums of their money for his own use through fraud and misrepresentations. The plaintiffs moved for an order of notice alleging that the whereabouts of Pease were unknown, and that Pease was a fugitive from justice and was wanted by the Connecticut state police. Pursuant to the motion, the court issued an order of notice directing that the notice most likely to come to the attention of Pease would be service by registered mail in care of his wife, Tiencke Pease, at her home address in Florida. The registered letter was returned unclaimed on March 22, 1975.

The original complaint was brought in three counts, one for each of the plaintiffs. Upon receiving notice of the lawsuit, the commission intervened on May 2, 1975, whereupon the complaint was amended by adding a fourth count which repeated in reduced form the allegations against Pease and also contained additional allegations reflecting the interest of the commission. Thereafter, the plaintiffs moved for a subsequent order of notice to Pease by publication and, pursuant to court order, notice of the pendency of the action was published in the Hartford Courant on May 22, 1975.

On October 27, 1975, the court granted the plaintiffs' motion for default against Pease for failure to appear. On December 12, 1975, the court, *Missal, J.,* after a hearing in damages, rendered a judgment upon default against Pease on behalf of the plaintiffs in varying amounts. No appeal was taken from this judgment.

On February 20, 1976, the commission filed an answer and several special defenses addressed to

the fourth count of the complaint. Thereafter, on January 25, 1979, the commission moved to "reopen" (sic) the judgment upon default entered against Pease. This motion was denied by the court, *Sidor, J.,* on April 10, 1979, and no appeal was taken. On October 12, 1979, the court, *Bieluch, J.,* ruled that the commission's special defenses, having been filed postjudgment, could not prevail in the plenary action against Pease; it also dismissed the fourth count. No appeal was taken from this action.

On May 26, 1976, the plaintiffs filed in the Superior Court a verified claim, a copy of which had been served on the commission on May 20, 1976, seeking an order directing payment out of the Real Estate Guaranty Fund for amounts unpaid on their judgment against Pease. The commission filed an answer and several special defenses. The hearing, which was held after the entry of judgment in the plenary action, was limited by the trial court to the issue whether the activities of the parties came within the purview of General Statutes § 20-324e (b). The court, *Wright, J.,* decided this issue in favor of the plaintiffs D'Occhio and Gaetani and against the plaintiff Perlman.

In its appeal the commission challenges the court's action in restricting the hearing to the question of whether the activities of the parties came within the purview of the Real Estate Guaranty Fund statute. It also claims that the judgment in the plenary action was invalid for lack of personal jurisdiction over Pease, that the transactions between the plaintiffs and Pease did not come within the purview of § 20-324a and that the plaintiffs' actions were not brought within the limitation period prescribed by § 20-324d. In his cross

appeal Perlman challenges the court's conclusion that his dealings with Pease did not come within the purview of § 20-324a.

## I

The Real Estate Guaranty Fund; General Statutes §§ 20-324a through 20-324g;[1] authorizes the commission to establish a fund to compensate persons aggrieved by the defalcations of real estate brokers, their real estate salesmen or employees

---

[1] "[General Statutes] Sec. 20-324a. REAL ESTATE GUARANTY FUND. The Connecticut real estate commission is authorized and directed to establish and maintain a real estate guaranty fund from which, subject to the provisions of sections 20-324a to 20-324j, inclusive, any person aggrieved by any action of a real estate broker or real estate salesman, duly licensed in this state under section 20-312, by reason of the embezzlement of money or property, or money or property unlawfully obtained from any person by false pretenses, artifice, trickery or forgery or by reason of any fraud, misrepresentation or deceit by or on the part of any such real estate broker or real estate salesman or the unlicensed employee of any such real estate broker, may recover, on order of the court, compensation in an amount not exceeding in the aggregate the sum of ten thousand dollars in connection with any one transaction or claim, regardless of the number of persons aggrieved or parcels of real estate involved in such transaction or claim."

"[General Statutes] Sec. 20-324b. FEE PAYABLE TO FUND. Any person who receives a real estate broker's or real estate salesman's license for the first time shall pay an additional fee of twenty dollars in addition to all other fees payable, which additional fee shall be credited to the real estate guaranty fund, provided in no case shall any real estate broker or salesman be required to pay said fee of twenty dollars more than once."

"[General Statutes] Sec. 20-324c. LEVEL OF GUARANTY FUND. CREDITS TO GENERAL FUND. Said commission shall maintain said real estate guaranty fund at a level not to exceed two hundred seventy-five thousand dollars and to this intent moneys received under section 20-324b shall be credited to said guaranty fund whenever the fund balance is below two hundred seventy-five thousand dollars and any such moneys may be invested or reinvested in the same manner as funds of the state employees retirement system, and the interest arising from such investments shall be credited to the general fund. Any moneys received under said section 20-324b not required to maintain said real estate guaranty fund balance

and creates a procedure pursuant to which such aggrieved persons may collect from the guaranty fund. The statute; § 20-324e; contemplates two separate proceedings, a plenary action resulting in a valid money judgment against the agent and a secondary proceeding for the purpose of collecting from the fund any unpaid amount of the judgment in the plenary action.

shall be deposited to the general fund. All moneys in the guaranty fund in excess of two hundred seventy-five thousand dollars, on May 19, 1976, shall be transferred by the treasurer to the general fund."

"[General Statutes] Sec. 20-324d. LIMITATION OF ACTIONS. No action may be commenced to recover damages under sections 20-324a to 20-324j, inclusive, which might subsequently result in an order for collection from said guaranty fund, later than two years from the accrual of the cause of action thereon."

"[General Statutes] Sec. 20-324e. PROCEDURE. (a) When any aggrieved person commences any action under sections 20-324a to 20-324j, inclusive, for a judgment which may result in collection from said guaranty fund, the aggrieved person shall notify said commission in writing to this effect at the time of the commencement of such action. Said commission shall have the right to enter an appearance, intervene in or defend any such action.

"(b) When any aggrieved person recovers a valid judgment in the superior court against any real estate broker or real estate salesman or the unlicensed employee of any such real estate broker for loss or damages sustained by reason of the embezzlement of money or property, or money or property unlawfully obtained from any person by false pretenses, artifice, trickery or forgery or by reason of any fraud, misrepresentation or deceit by or on the part of such real estate broker or salesman or the unlicensed employee of any such real estate broker, such aggrieved person may upon the final determination of, or expiration of time for appeal in connection with, any judgment, file a verified claim in the superior court for the judicial district of Hartford-New Britain or in the superior court for the judicial district in which the aggrieved person resides or the superior court in which such judgment was entered and, upon ten days' written notice to said commission, may apply to such court for an order directing payment out of said guaranty fund of the amount unpaid upon the judgment, subject to the limitations stated in section 20-324a and the limitations specified in this section.

"(c) The court shall proceed upon such application in a summary manner, and, upon the hearing thereof, the aggrieved person shall be required to show: (1) He is not a spouse of the debtor, or the personal representative of such spouse; (2) he has complied with

When an action is commenced under the statute the plaintiff is required to notify the commission which then has the right to enter an appearance, intervene in or defend the action. General Statutes § 20-324e (a). Section 20-324g authorizes the commission to "enter an appearance, file an answer, appear at the court hearing, defend the action or take whatever other action it may deem appropriate *on the behalf and in the name of the defendant* and take recourse through any appropriate method of review or appeal *on behalf and in the name of the*

---

all the requirements of this section; (3) he has obtained a judgment as set out in subsection (b) of this section, stating the amount thereof and the amount owing thereon at the date of the application; (4) he has caused to be issued a writ of execution upon said judgment and the officer executing the same has made a return showing that no personal or real property of the judgment debtor liable to be levied upon in satisfaction of the judgment could be found, or that the amount realized on the sale of them or of such of them as were found, under the execution, was insufficient to satisfy the judgment, stating the amount so realized and the balance remaining due on the judgment after application thereon of the amount realized; (5) he has made all reasonable searches and inquiries to ascertain whether the judgment debtor is possessed of real or personal property or other assets, liable to be sold or applied in satisfaction of the judgment; (6) that by such search he has discovered no personal or real property or other assets liable to be sold or applied, or that he has discovered certain of them, describing them, owned by the judgment debtor and liable to be so applied, and that he has taken all necessary action and proceedings for the realization thereof, and that the amount thereby realized was insufficient to satisfy the judgment, stating the amount so realized and the balance remaining due on the judgment after application of the amount realized.

"(d) Whenever the aggrieved person satisfies the court that it is not practicable to comply with one or more of the requirements enumerated in subdivisions (4), (5) and (6) of subsection (c) of this section and that the aggrieved person has taken all reasonable steps to collect the amount of the judgment or the unsatisfied part thereof and has been unable to collect the same, the court may in its discretion dispense with the necessity for complying with such requirements.

"(e) The court shall make an order directed to said commission requiring payment from the real estate guaranty fund of whatever

*defendant.*" (Emphasis added.) The commission argues that the statute authorizes the commission to intervene on its own behalf as a protector of the guaranty fund or to appear and defend on behalf and in the name of the defendant. We do not agree.

Section 20-324g specifically limits the commission's right of intervention. The commission seizes on the phrase "intervene in or defend" contained

sum it shall find to be payable upon the claim, pursuant to the provisions of and in accordance with the limitations contained in this section and section 20-324a, if the court is satisfied, upon the hearing, of the truth of all matters required to be shown by the aggrieved person by subsection (c) of this section and that the aggrieved person has fully pursued and exhausted all remedies available to him for recovering the amount awarded by the judgment of the court.

"(f) If said commission pays from said fund any amount in settlement of a claim or toward satisfaction of a judgment against a licensed real estate broker or real estate salesman pursuant to an order under subsection (e), the license of the broker or salesman shall be automatically revoked and no such broker or salesman shall be eligible to receive a new license until he has repaid in full, plus interest at the rate of four per cent a year, the amount paid from said guaranty fund on his account. A discharge in bankruptcy shall not relieve a person from the penalties and disabilities provided in this subsection.

"(g) If, at any time, the money deposited in said guaranty fund is insufficient to satisfy any duly authorized claim or portion thereof, said commission shall, when sufficient money has been deposited in said guaranty fund, satisfy such unpaid claims or portions thereof, in the order that such claims or portions thereof were originally filed, plus accumulated interest at the rate of four per cent a year."

"[General Statutes] Sec. 20-324f. PENALTY FOR FALSE OR UNTRUE CLAIM. Any person filing with the commission any notice, statement or other document required under the provisions of section 20-324e which is false or untrue or contains any material misstatement of fact shall be fined not less than two hundred dollars."

"[General Statutes] Sec. 20-324g. PROCEDURE FOR COMMISSION. When said commission receives notice, as provided in section 20-324e, it may enter an appearance, file an answer, appear at the court hearing, defend the action or take whatever other action it may deem appropriate on the behalf and in the name of the defendant and take recourse through any appropriate method of review or appeal on behalf and in the name of the defendant."

in subsection (a) of § 20-324e as affording it a choice of intervening independently or on behalf of the agent. The disjunctive "or" can be construed as "and" where such construction clearly appears to have been the legislative intent. *Dana-Robin Corporation* v. *Common Council,* 166 Conn. 207, 221, 348 A.2d 560 (1974). When the disjunctive phrase relied on by the commission is read together with § 20-324g, which specifically gives the commission only a derivative party status in the plenary action, it is clear that the legislature used the word "or" in the phrase in question in a conjunctive sense.

II

In the secondary action the commission filed a plea in abatement challenging the jurisdiction of the court on the ground that the judgment obtained in the plenary action was invalid for lack of jurisdiction over Pease. The court, *Kelly, J.,* ruled correctly that the question whether the court had personal jurisdiction over Pease in the principal action went to the merits of the secondary proceeding and not to the court's jurisdiction to hear and determine the issues involved in that proceeding. The commission thereafter filed a special defense in which it alleged the invalidity of the judgment in the principal action for lack of jurisdiction over Pease due to a defective service of process. Although the trial court, *Wright, J.,* limited the hearing in the secondary proceeding to the question whether the transactions between the plaintiffs and Pease came within the purview of the guaranty fund statute, because the validity of the judgment in the plenary action is an essential element which the plaintiff

must show in the secondary proceeding and because a lack of personal jurisdiction over Pease might render that judgment void, we address that issue here.

The commission's claim that the judgment in the plenary action is invalid for lack of personal jurisdiction over Pease is without merit. The basis of the commission's claim is that service of the complaint by mail or publication did not conform with the requirements of the statute, in that service of the complaint was not made upon the secretary of the state nor did the copy of the complaint mailed to the defendant contain an endorsement by the officer that such service had been made and therefore was defective. Because Pease had engaged in business in this state and, after the transactions alleged in the complaint, had left the state for parts unknown, he could be subjected to personal jurisdiction under the long-arm statute, § 52-59b. This statute provides for the officer to serve a true and attested copy of the complaint upon the secretary of the state and to send to the defendant, by registered or certified mail, postage prepaid, a like true and attested copy with an endorsement thereon of the service upon the secretary addressed to the defendant at his last-known address. "The requirement that the copy be mailed to the defendant at his 'last-known address' does not mean the last address known to the plaintiff but does mean the last address of the defendant so far as it is known, that is, by those who under the ordinary circumstances of life would know it." *Hartley* v. *Vitiello,* 113 Conn. 74, 80, 154 A. 255 (1931). Sending a copy by registered mail to Pease's wife, under the circumstances of the case, would satisfy the "last-known address" requirement. Id.

To satisfy the constitutional requirements of due process for in personam jurisdiction there must be a basis for jurisdiction and sufficient notice. *Anderson* v. *Schibi,* 33 Conn. Sup. 562, 565, 364 A.2d 853 (1976). A basis for jurisdiction exists if it can be shown that the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). The commission does not challenge the fact that there was a basis for the trial court's jurisdiction over Pease under the long-arm statute. Nor is there any reason to doubt that the methods used here for giving notice, under the circumstances of this case, satisfied the constitutional requirement of due process. *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 317, 70 S. Ct. 652, 94 L. Ed. 865 (1950). A notice mailed to the wife of a missing person is one that in the ordinary course of events is reasonably certain to reach the addressee. Notice of this nature is adequate whether or not actually received by the addressee. 1 Restatement (Second), Judgments § 2, comment c. In the case of persons missing or unknown, notice by publication, though indirect and probably futile, also satisfies constitutional standards. *Mullane* v. *Central Hanover Bank & Trust Co.,* supra, 317.

There being both a basis for jurisdiction and adequate notice to meet constitutional requirements, the fact that the plaintiffs did not comply with the statutory requirements is an irregularity which did not render the notice inadequate. 1 Restatement (Second), Judgments § 2, comment e, illustration 4. Such irregularities may render the judgment void-

able but not void. See *Orcutt's Appeal from Probate,* 61 Conn. 378, 381, 24 A. 276 (1892). Voidable judgments are not subject to collateral attack.[2] *Jensen* v. *Nationwide Mutual Ins. Co.,* 158 Conn. 251, 260, 259 A.2d 598 (1969); *Rathkopf* v. *Pearson,* 148 Conn. 260, 265, 170 A.2d 135 (1961). The commission's effort in the secondary proceeding to challenge the irregularity of service upon Pease in the plenary action was ineffective because it was a collateral attack. *General Dynamics Corporation* v. *Groton,* 184 Conn. 483, 493-94, 440 A.2d 185 (1981).

### III

The trial court, *Bieluch, J.,* relying on *Arizona Real Estate Department* v. *Arizona Land Title & Trust Co.,* 9 Ariz. App. 54, 449 P.2d 71 (1968), ruled that questions relating to the fact and amount of the agent's liability could be raised by the commission only in the principal action, but that questions relating to the liability of the fund, such as whether the transactions between the parties came within the purview of the statute, could be addressed in the secondary proceeding. The trial court, *Wright, J.,* on the basis of this ruling, limited the trial in the proceeding that is the subject of this appeal

---

[2] A void judgment is an invalid judgment. Even such a judgment, if it is a domestic judgment of a court of general jurisdiction, may not be vulnerable to collateral attack unless it is entirely invalid and that fact is disclosed by an inspection of the record itself. *Lampson Lumber Co.* v. *Hoer,* 139 Conn. 294, 297-98, 93 A.2d 143 (1952); 1 Freeman, Judgments (5th Ed.) p. 602. A voidable judgment, on the other hand, remains in full force and effect as a valid judgment until set aside in a direct proceeding. *Lampson Lumber Co.* v. *Hoer,* supra, 299; *Hurlbut* v. *Thomas,* 55 Conn. 181, 183, 10 A. 556 (1887); *Coit* v. *Haven,* 30 Conn. 190, 199 (1861); 46 Am. Jur. 2d, Judgments § 48.

to the "purview" issue. Because our guaranty fund statute virtually tracks the Arizona statute we find *Arizona Real Estate Department* most persuasive.

Subsection (c) of § 20-324e sets out six requirements which the applicant must satisfy in order to secure a recovery from the fund. First, he must show that he is not the spouse or personal representative of the spouse of the judgment debtor. Second, he must demonstrate that he has complied with all of the requirements of § 20-324e. Third, he must establish that he has obtained a judgment as set out in subsection (b) of this section. Finally, fourth, fifth and sixth, unless this requirement is dispensed with by the court, he must show that he has exercised due diligence in attempting to obtain recovery of his damages from the agent. The type of judgment set out in subsection (b) is one that is against a real estate broker or real estate salesman or the unlicensed employee of any such real estate broker for loss or damage sustained by reason of, inter alia, embezzlement or fraud.

The two proceedings contemplated by the guaranty fund statute serve separate functions. The plenary action against the agent establishes the fact and amount of his liability. Because this is an essential first step to securing a recovery from the fund the commission is required by statute, § 20-324e (a), to receive notice of the commencement of the action and is bound by the result. *Arizona Real Estate Department* v. *Arizona Land Title & Trust Co.*, supra, 58–59. This is so whether or not the commission exercises its right of intervention. Id. "In the suit against the real estate broker or salesman, it is immaterial whether the factual predicates for recovery against the fund have occurred; we do not believe that this statute,

permitting intervention, mandates that these issues, completely collateral to that plenary action, be injected into it." Id.

There are practical reasons why the plenary action should be treated as an ordinary action for conversion. Not every case brought against a broker for misappropriation necessarily involves recovery from the fund. The broker may successfully defend the suit or he may fully satisfy any judgment against him. In each of these situations intervention by the commission may entail a waste of commission resources. Furthermore, the introduction into the broker's trial of issues which are irrelevant to the broker's liability would only complicate that trial with little or no saving for the litigants or the judicial process. See note, "The Real Estate Recovery Fund: Constitutional and Procedural Critique of an Illinois Remedy," 56 Chicago-Kent L. Rev. 401 (1980).

The trial court was correct in reserving for the secondary action against the fund such factual issues as the status of the agent and the reason for the loss. Since those issues were adjudicated by the court in connection with its determination that the activities of the parties came within the purview of the statute, we address those issues at this point.

The parties stipulated that at all times relevant to this action Florida Unlimited, Inc., held a valid Connecticut license as a real estate broker and that William Braman Pease did not hold a valid Connecticut license either as a real estate salesman or broker. The trial court, applying the long recognized principle that the existence of an employer-employee relationship depends on whether the employer has retained the right to control the means and method of work; *Spring* v. *Constantino,* 168 Conn. 563, 573, 362 A.2d 871 (1975); found that

Pease was an employee of Florida Unlimited. The court found that when he was hired Pease signed and worked under the same contract agreement with Florida Unlimited as did other salespeople with the firm and that clause 13 of that contract gave the company control over its salespersons, that business cards were provided for Pease by Florida Unlimited as was stationery and office space, that, at one point, Pease was designated as the company's manager for Marco Island Florida properties, including those which the plaintiffs attempted to purchase, and that he was also named salesman of the year by the company.

The trial court further found that D'Occhio's first contact with Florida Unlimited was in the spring of 1972, at which time he learned that the company had an exclusive franchise with Deltona Corporation to sell Marco Island properties in Connecticut. In July, 1972, he met Pease for the first time in his Florida Unlimited office. All additional meetings with Pease took place in that office. At all times Pease represented himself as being an agent of Florida Unlimited. D'Occhio was informed by others working for Florida Unlimited that he was the only person in the company who was dealing with industrial property in Florida and that he was the best salesman that they had. The employee representation was further supported by Pease's giving D'Occhio a business card giving the Florida Unlimited address as his business address.

Following a trip to Florida to see the property which Pease had in mind for him, D'Occhio purchased an interest in the property through Pease. He gave Pease a cashier's check for $10,000, and signed a participation agreement with Pease in the Florida Unlimited office. Although no reference to

Florida Unlimited was made in the agreement, the address used by Pease was that of the corporation. The agreement was signed September 28, 1972. Other evidence indicates that Pease was employed by Florida Unlimited from June, 1972, until October, 1973, at which time he was requested to leave. The court concluded that Pease was acting as a salesman for Florida Unlimited at the time of his dealings with D'Occhio and that the activities of Pease and D'Occhio came within the purview of the guaranty fund statute.

With respect to Gaetani, the trial court found that Gaetani met Pease in the fall of 1972, at which time Pease again represented himself as an employee of Florida Unlimited. As with D'Occhio, Pease provided his client with a Florida Unlimited business card, organized a trip to Florida so he could see the land they were discussing, and provided him with brochures, all indications of his employee status with Florida Unlimited. Gaetani also received a wealth of information on Florida Unlimited and Deltona stationery, including annual statements and congratulatory letters.

Gaetani decided to purchase six lots. The purchase and sale agreements were completed by Pease in his Florida Unlimited office on Marco Island Development Corporation forms. On each of these documents Pease gave as his address the same address in West Hartford as that of Florida Unlimited. On the basis of these agreements Gaetani paid Pease $20,000.

In August, 1973, Gaetani received a letter from Pease stating that payment had been made on the land. The letterhead used was that of Broome & Co. The participation agreement between them

was then drawn up by Pease in his Florida Unlimited office. Both parties signed it, Pease explaining that Broome & Co. was a subsidiary of Deltona. At that time Gaetani also received notice from Peter Wolf, general manager of Florida Unlimited, that payment on his lots was six months in arrears. Accepting Pease's explanation that a computer error had been made, Gaetani paid Pease an additional $5000. According to Wolf, participation agreements were not permitted at Florida Unlimited, yet Pease had all his clients sign one.

The court concluded that while Pease was acting as an employee of Florida Unlimited when their dealings began, as shown by the acknowledgments by Florida Unlimited and Deltona of Gaetani's purchases, he was no longer acting in that capacity by the time the participation agreement was signed. Thus there were two transactions. The first concerned the purchase and sale agreements which resulted in the $20,000 payment, at which time Pease was using the Florida Unlimited address, business cards and stationery, and the second involved the $5000 payment wherein Pease was using Broome & Co. for his business name. The court concluded that the first transaction came within the purview of the statute whereas in the second transaction Pease was acting as an independent contractor.

Respecting Perlman, the court found that although Perlman met Pease in his Florida Unlimited office and did business with him there, there was no conclusive evidence that Pease was acting as an employee of Florida Unlimited at the time Perlman paid him $23,000. There is no indication of an employee relationship with Florida Unlim-

ited in any of the documents submitted in evidence. Pease gave still another address in the participation agreement. Interest checks paid to Perlman as a result of the agreement were made out on Broome & Co. stationery. The court concluded that the transaction between Perlman and Pease was not within the purview of the statute.

"On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book, 1978, § 3060D. This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). Applying the foregoing standard, we cannot conclude that the trial court's decision was clearly erroneous in any of the cases. In the cases of D'Occhio and Gaetani, although the commission focuses on the participation agreements as the inducement for the transfer of money that was ultimately embezzled by Pease, the court found that in D'Occhio's case the entire payment and in Gaetani's case $20,000 of the $25,000 was paid for the purchase of Marco Island properties. At no point in its brief does the commission argue that the court's findings of fact are not supported in the evidence or that the conclusions do not flow legally and logically from these facts.

In Perlman's case the claim is that since the transaction between Perlman and Pease occurred at the office of Florida Unlimited at a time when Pease was its employee, then he was at the very least acting with the apparent authority of his employer. We do not agree. "[A]pparent authority is to be determined, not by the agent's own acts, but by the acts of his principal. And the acts of the principal must be such that (1) the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority, and (2) in consequence thereof the person dealing with the agent, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority." *Nowak* v. *Capitol Motors, Inc.,* 158 Conn. 65, 69, 255 A.2d 845 (1969). "The issue of apparent authority is one of fact, requiring the trier of fact to evaluate the conduct of the parties in light of all of the surrounding circumstances. [Citations omitted.] Only in the clearest of circumstances, where no other conclusion could reasonably be reached, is the trier's determination of fact to be disturbed." *Lettieri* v. *American Savings Bank,* 182 Conn. 1, 9, 437 A.2d 822 (1980). No such disturbance is warranted by the facts of this case. There is no evidence that Wolf or any other officer of Florida Unlimited authorized Pease to use the participation agreement or knew of its existence. To the contrary Wolf testified, and the court found, that such agreement was not authorized. Nor is there any evidence that Wolf or any other officer of Florida Unlimited authorized or knew of the use of "Broome & Co." as a mechanism for the sale of its Florida properties. In fact, Broome & Co. turned out to be a figment of Pease's imagination. Nevertheless, the company had con-

ferred such sweeping authority on Pease with respect to the sale of its Deltona property, to the extent of designating him as Marco Island Development Corporation manager, that the trial court would have been justified in finding that Pease's use of the "Broome & Co." ploy for the sale of Deltona property was within his apparent authority, but it was not bound to do so.

## IV

The commission claims that D'Occhio's[3] action against Pease was not brought within the limitations of § 20-324d. This section provides: "No action may be commenced to recover damages under [this statute] which might subsequently result in an order for collection from said guaranty fund, later than two years from the accrual of the cause of action thereon." The commission pleaded this statute as a special defense in the recovery action. It claims that the statute began to run in 1972 when the plaintiffs paid over moneys to Pease. The plaintiffs for their part contend that the statute did not begin to run until their discovery of Pease's defalcation in 1973. The court did not address this problem in the erroneous belief that the matter had been determined at an earlier stage of the proceedings. Since the guaranty fund statute of limitations is a good defense to the secondary action and since it had been properly pleaded it should have been addressed.

The statute of limitations in the guaranty fund statute; § 20-324d; is addressed to the action brought against the real estate agent. "The general rule is that where a statute gives a right of action

---

[3] In its brief the commission concedes that Gaetani's action was brought within the statutory time limits.

which did not exist at common law, and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attached to the right—it is a limitation of the liability itself as created, and not of the remedy alone." *DeMartino* v. *Siemon,* 90 Conn. 527, 528–29, 97 A. 765 (1916). The action against the agent is not created by statute but rather exists at common law and therefore the limitations statute is merely a bar to the enforcement of a particular remedy. See *L. G. DeFelice & Sons, Inc.* v. *Wethersfield,* 167 Conn. 509, 512, 356 A.2d 144 (1975). If a plaintiff who has a claim against a real estate broker for conversion is unconcerned about collecting his judgment out of the guaranty fund he can bring his action within the three years provided by General Statutes § 52-577 for actions founded on tort. The defense of that statute must be raised, if at all, in the plenary action. If, on the other hand, he desires the certainty of collectibility to the extent of $10,000 out of the guaranty fund, he must bring himself within the two year time bar.

Section 20-324d is a limitations statute based on the accrual of a cause of action. "Applied to a cause of action, the term to accrue means to arrive; to commence; to come into existence; to become a present enforceable demand." *Eising* v. *Andrews,* 66 Conn. 58, 64, 33 A. 585 (1895). With certain exceptions not pertinent here, in cases involving the misappropriation of funds of another, the right of action will accrue at the time of the defalcation; *State ex rel. McClure* v. *Northrup,* 93 Conn. 558, 563, 106 A. 504 (1918); unless the statutory period is extended as a result of fraudulent concealment; General Statutes § 52-595; in which case the cause of action will not accrue until its existence is dis-

covered by the injured party. *Eising* v. *Andrews,* supra. Of course, for a plaintiff to rely on the fraudulent concealment statute it must be pleaded. *Rosenblatt* v. *Berman,* 143 Conn. 31, 39–40, 119 A.2d 118 (1955). No such pleading was filed in this case. Of course, upon a new trial the plaintiffs would not be precluded, with the permission of the trial court, from filing an appropriate amendment to their pleadings.

There is no error in the cases of Gaetani and Perlman; there is error in the case of D'Occhio, the judgment in this case is set aside and a new trial is ordered limited to the question whether the plaintiff brought his action against Pease within the time limitations prescribed by General Statutes § 20-324d; if, upon this issue, the court finds that the action against Pease was brought within the time limitations of § 20-324d, judgment is to be rendered that the plaintiff recover of the defendant commission the amount of damages found due him in the judgment appealed from; but if, upon this issue the court shall find that the action was not so brought, then judgment is to be rendered finding the issues for the commission.

In this opinion the other judges concurred.