[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This suit between the plaintiff, One Fawcett Place Limited Partnership (Fawcett), as lessor, and the defendant, Diamandis Communications, Inc. (Diamandis), a magazine publishing company, as lessee, involves a lease dated June 22, 1989, which covers the top floor of a three story commercial building known as the Fawcett Building, or One Fawcett Place, on Greenwich Avenue in Greenwich. The complaint is in four counts, the first claiming that defendant breached the lease by failing to pay installments of rent when due. The second CT Page 9411 count alleges that defendant Diamandis removed certain personal property and fixtures from the leased premises. The third count describes this removal as thievery under General Statutes 52-564, and claims plaintiff is entitled to treble damages. The fourth court alleges a violation of General Statutes 42-110b et seq., the Connecticut Unfair Trade Practices Act (CUTPA). Plaintiff agreed at the time of trial to withdraw the second and third counts.
The operative complaint is dated March 28, 1990. Plaintiff Fawcett alleges in the first count that through its predecessor in interest, Fawcett Place Associates, Limited, it entered into a purchase and sale contract with defendant Diamandis, dated February 10, 1989, which included an agreement by Diamandis, as the owner and seller of the building, to lease back a portion of the premises from Fawcett, the purchaser of the building. The lease covered the "entire top floor" of the Fawcett Building for a term of two years from June, 1989 to June, 1991. The plaintiff further alleges in this count that the lease authorized plaintiff to undertake remodeling of the building. Fawcett also contends that defendant made it clear that it intended to vacate the premises at One Fawcett Place as soon as the new location Diamandis was renting at 500 West Putnam Avenue in Greenwich was ready to be occupied by its employees. Plaintiff claims that the lease further provides that if defendant terminated the lease, it was obliged to pay Fawcett either the present value of the remaining payments of rent over the balance of the two year lease in a lump sum, or give plaintiff a letter of credit to secure its obligations to pay the remaining monthly installments of rent as each became due, but that the defendant had failed to do either, and only paid rent for the months of June, July and August of 1989. The lease provided for a total rent payment of $895,000, consisting of 24 monthly payments of amounts varying between $48,333.33 and $33,333.33. Plaintiff claims that it is owed $803,333.34 in building rent, plus unpaid parking rent of $65,100, for a total of $868,433.34.
Defendant Diamandis filed an answer, special defenses and a counterclaim, admitting that it had entered into a purchase and sale agreement and a lease with plaintiff, and that it had understood that plaintiff intended to remodel a portion of the premises. The defendant also filed three special defenses claiming that plaintiff had demolished the demised premises to such an extent that the lease had been terminated, absolving defendant from liability for further rent payments; that this demolition constituted a "constructive eviction;" and that plaintiffs claim for rent was under the circumstances "illegal, void and contrary to public policy." CT Page 9412
The counterclaim filed by defendant is in three counts. The first count alleges that the lease provided that the tenant would have "quiet enjoyment" of the leased premises, but that Fawcett, at the beginning of August of 1989, "substantially demolished" the premises, thus denying defendant the right to use and occupy the leased space, and causing damage to the counterclaiming defendant. The second count of the counterclaim alleges that plaintiffs activities rendered the premises substantially untenantable, again causing it damage. The third count claims that plaintiff's demolition activities constituted a violation of CUTPA, which entities defendant to punitive damages, costs and attorney's fees.
This case was heard as a bench trial, conducted over the course of fifteen trial days, where ten witnesses testified, several depositions were read into the record, and approximately fifty exhibits were introduced into evidence. The key document in this case is the lease dated June 22, 1989, which, it should be noted, is between two commercial entities, with sophisticated and experienced personnel, and was prepared and reviewed by well-known New York City law firms. This document, in my opinion, is detailed and clear. Accordingly, it is not necessary to attempt to delve into the minds of the principals of the lessor and the lessee to determine how they reasonably understood each other's intentions, because the lease, to use a somewhat hackneyed phrase, speaks for itself.
The main issue in this case is whether the plaintiff's demolition work at One Fawcett Place, which was performed after the lease with Diamandis commenced, constituted a constructive eviction of the defendant, or whether, as plaintiff claims, the demolition was described and permitted in the lease, and began only after defendant had already abandoned the premises and terminated the lease. Section 14 of the lease relates to demolition work to be performed by Fawcett after it purchased the building. This section in essence provides that the lessor was entitled to make alterations, changes and improvements to the entire building, including the demised premises, provided that the lessee's right of access to the demised premises was not unreasonably obstructed. The defendant lessee acknowledges in the lease that these changes might cause noise, vibrations, or changes in temperature in its premises, and that such factors would not constitute "an actual or constructive eviction."[1]
At the same time, the plaintiff, as lessor, covenanted that the defendant "shall quietly have and enjoy the Demised Premises during the term of this Lease, without hindrance or molestation by anyone claiming by, through or under Landlord, subject, to the exceptions, CT Page 9413 reservations, and conditions of this Lease." Thus, the issue is whether or not the plaintiff, as lessor, complied with or went beyond its rights under the lease to make alterations and improvements affecting the demised premises without such activities constituting an eviction.
In this regard, the key question is whether or not the work performed by plaintiff unreasonably obstructed the defendant's right of access to the space it had leased. There was conflicting evidence as to exactly what the plaintiff did at One Fawcett Place by way of construction and alterations, and exactly when such activities commenced, but my sense of what happened can be summarized as follows.
Diamandis moved its business and employees out of One Fawcett Place over the weekend of July 28 — July 31, 1989. Alexius C. Conroy, the president and chief executive of the plaintiff, wrote a letter dated July 28, 1989, to David J. Pecker, vice president and controller of Diamandis, stating, among other things, that: ". . . we have rescheduled our major demolition work to commence the morning of August 2nd and we will be going fullspeed from that date." In addition, the plaintiff obtained a building permit from the town, which was issued July 31, 1989 and described the work as: "electrical disconnects, interior demolition, removal disposal of asbestos containing materials."
There was credible testimony offered at the trial to the effect that the impact of the work was substantial, and the plaintiff itself in the July 28, 1989 letter characterized its activities as "major demolition." It consisted, among other things, of (i) removing glass and metal walls which were used to divide exterior office space in the demised premises; (ii) detaching ceiling tiles, which caused electrical wires to hang down from the ceiling; (iii) removing carpet tiles, which left a sticky, adhesive material on the concrete floor; (iv) disconnecting of electric power; (v) disassembling and removing of so-called "Hayworth" partitions, which divided the leased premises into various work stations; and (vi) causing broken glass, dust and smoke to be present in the demised premises. After paying rent for the three previous months, on or about September 1, 1989, the defendant notified plaintiff that the demolition work performed during August of that year at One Fawcett Place justified terminating the lease and surrendering possession of the premises. The work itself was performed at various times during the month of August.
I believe that the demolition work performed by the plaintiff unreasonably obstructed the defendant from having access to and using CT Page 9414 the demised premises, and thus went beyond the scope of the work permitted by the lease. Moreover, the building permit itself stated that: "[o]ccupancy of this new building or addition prior to issuance of a Certificate of Occupancy and/or Compliance will be considered a violation of the State of Connecticut Basic Building Code and Building Zone Regulations." This restriction also constituted an unreasonable obstruction of access to the demised premises.
It is certainly true that defendant knew that the plaintiff would undertake alterations at One Fawcett Place, that would impact on the demised premises. However, I believe that Fawcett went too far in its alterations. In the words of section 14 of the lease, the plaintiff "unreasonably obstructed" the defendant's "right of access" to the third floor of One Fawcett Place.
In addition to citing section 14 of the lease, the plaintiff also justifies its demolition work at One Fawcett Place on the ground that its tenant, Diamandis, terminated the lease. Plaintiff in a brief indicated that the issue in this case is: "whether DCI (the defendant) voluntarily elected to vacate the premises, terminate the lease, and surrender its leasehold rights." Termination of the lease by the defendant is discussed in paragraph 31.2 of the lease, which provides that the tenant may terminate the lease by written notice, conditioned upon vacating the premises and paying to the plaintiff lessor either the present value of the rent over the remainder of the original lease, or the monthly rent as it becomes due, but subject to posting a letter of credit in the face amount of the total rental payments due.[2]
Plaintiff failed to show that pursuant to section 31.2 of the lease, the defendant ever sent a "written notice" of its election to "terminate and cancel" the lease. A significant factor in this regard was a letter from Pecker to Conroy dated July 27, 1989, which indicated that defendant was moving its business operations to 500 West Putnam Avenue on July 31, 1989, but was "not abandoning" equipment and property remaining in the demised premises.[3]
There was credible testimony in this case that the reason defendant signed a two year lease was to keep space available at One Fawcett Place, even after its move to 500 West Putnam Avenue, in the event it needed additional space for acquisitions of new magazines or other legitimate business purposes. Plaintiff attacked vigorously the bona fides of defendant's alleged plans to move certain employees to One Fawcett Place, and its proposed acquisitions of two publications, McCall's Magazine and The National Enquirer, which might have CT Page 9415 necessitated such a move. However, the crucial issue in this case is not which of Diamandis' employees or publications might eventually have been housed at One Fawcett Place, but rather whether plaintiff breached the lease, and hence is not entitled to recover rent for the balance of the lease.
Plaintiff also contends that Pecker, who was in charge for Diamandis of the sale of the Fawcett Building and the new lease at 500 West Putnam Avenue, orally advised Conroy and others that defendant intended to vacate the premises, and took action consistent with this intent. However, section 36 of the lease provides that: "[t]his Lease cannot be changed or terminated orally," so I believe that any such statements or conduct are legally irrelevant.
Defendant would not have entered into this lease with plaintiff and obligated itself to spend close to a million dollars, knowing full well that it was moving its current operation away from One Fawcett Place to a new location, unless it had wished to keep some space at One Fawcett Place available for its own purposes. Significantly, the lease at Diamandis' new location, 500 West Putnam Avenue, which was for 21 years and was to house all Diamandis employees who had been working at One Fawcett Place, was signed before Diamandis and the plaintiff executed the lease at One Fawcett Place.
Plaintiff's demolition of the demised premises constituted a "constructive eviction," as alleged in Diamandis' special defenses. "[A] landlord's conduct may constitute the constructive eviction of a tenant if the landlord, while not actually depriving the tenant of possession of any part of the premises leased, has done or suffered some act by which the premises are rendered untenantable, and has thereby caused a failure of consideration for the tenant's promise to pay rent." (internal quotation marks omitted.) Connecticut National Bank v. Douglas, 221 Conn. 530, 538-39, 606 A.2d 693 (1992). "[W]hether there has been such interference with the tenant's peaceful enjoyment of the premises as to render the leasehold untenantable cannot be determined by general principles but depends instead on an inquiry in every instance [into] the facts of the particular case. By this is meant the situation of the parties to a lease, the character of the premises, the use to which the tenant intends to put them, and the nature and extent by which the tenant's use of the premises is interfered with by the injury claimed." (Internal quotation marks omitted.) Conference Center Ltd. v. TRC, 189 Conn. 212, 221,455 A.2d 833 (1983).
I do not believe Fawcett acted maliciously in performing CT Page 9416 alterations at One Fawcett Place after the Diamandis lease commenced. Rather, I believe Fawcett simply failed to recognize that defendant was only moving its operations to another location, and was not abandoning its leased premises and granting plaintiff carte blanche to undertake alterations at the Fawcett Building beyond those contemplated and permitted by the lease. As I view it, the defendant was doing two things simultaneously: renting new office space, and retaining One Fawcett Place for two years, at a cost of almost a million dollars, to accommodate possible needs for future expansion. Relocation is not equivalent to breach of the lease, abandonment of the demised premises, or termination of the lease. Section 24 of the lease lists certain events, referred to as "events of default," which entitle the plaintiff as lessor to terminate the lease, but does not include non-occupancy of the premises by the lessee as such an event. Moreover, there would be no financial incentive for defendant to terminate the lease. Termination would have forced defendant to choose between paying a lump sum for all the rent due, albeit with a discount, or posting a letter of credit to cover the monthly rent payments.
In connection with its claim that Diamandis voluntarily vacated the premises, plaintiff points out that defendant returned its employee parking permits to plaintiff. This argument misses the point that defendant was moving its present employees from One Fawcett Place, and was simply keeping the space available for possible future needs. Plaintiff also argues that defendant's receipt of rent concessions at 500 West Putnam Avenue in the same total amount of rent it owed the plaintiff over the two years of the lease bolsters its claim that defendant intended to surrender the lease.[4] However, the rent concession was part of the negotiations for the new lease and does not impact on whether the plaintiffs alterations at One Fawcett Place exceeded those permitted by the lease, and hence constituted a constructive eviction of the defendant. The rent concession obtained by Diamandis indicated its recognition that it was obliged to make rent payments to Fawcett for two years. I believe that defendant would have continued its rent payments had it not been constructively evicted by plaintiff's undertaking of major renovations at the demised premises.
In summary, the lease did not require occupancy of the leased premises by defendant, and non-occupancy is not an event of default. Diamandis paid rent for the month of August, 1989, although it had already moved out of the Fawcett Building at the end of the previous month. Defendant did not voluntarily terminate the CT Page 9417 lease or surrender possession of the leased premises. It only stopped paying rent after it had been constructively evicted from One Fawcett Place by plaintiffs extensive demolition activities. Accordingly, the defendant has proved its special defense of constructive eviction, and judgment may enter in favor of the defendant with respect to the plaintiff's complaint, including its CUTPA claim, which was based on conduct of the defendant which was justified under the circumstances.
The defendant failed to prove its counterclaim that it was damaged by the constructive eviction it suffered at One Fawcett Place. This contention was based on a claim that defendant was thwarted in a plan to move certain personnel of Elle Magazine, one of defendant's publications, who were working at 551 5th Avenue in New York City, to One Fawcett Place. The lease on 5th Avenue was to expire on October 1, 1989, and the plan was to move these people to 1633 Broadway, where all Diamandis operations in New York City were to be consolidated. Defendant claims that after it became clear that the Fawcett Building could not be used for the Elle personnel, it became necessary to pay approximately $80,000 in overtime to various construction workers at 1633 Broadway in order to complete renovations by October 1, 1989.
I believe the defendant failed to prove by a preponderance of the credible evidence that it is entitled to a recovery on its counterclaim. In the first instance, the claim that there was a plan to move Elle personnel to Greenwich was sketchy, as David Pecker and his assistant, Margaret Carroll, apparently kept this plan a secret from everyone else in the company.[5]
Secondly, some of the overtime at 1633 Broadway was paid on the 5th and 6th of August of 1989, before the defendant announced that it had been constructively evicted from One Fawcett Place. Moreover, it was brought out that the overtime payments encompassed work on six floors at 1633 Broadway, the 40th through the 45th, not just the 44th floor into which the Elle personnel were to be moved. Finally, in this regard, it would seem anomalous to charge the plaintiff with overtime payments made by defendant, which were caused by construction delays not occasioned by plaintiff. In other words, overtime payments made in New York caused by delay in construction at another building would not appear to flow normally and naturally from plaintiffs constructive eviction of defendant at One Fawcett Place.
Defendant's CUTPA claim was not proven either, since the underlying claim for overtime payments at 1633 Broadway has been determined to be unwarranted and unproven. As to the claim for CT Page 9418 a refund of the August, 1989, rent that defendant paid to plaintiff, this rent was paid voluntarily, and defendant should not be allowed a refund at this point. Therefore, judgment enters for the plaintiff on defendant Diamandis' counterclaim, without costs to either party.
So Ordered.
Dated at Stamford, Connecticut, this 2nd day of November, 1993.
William B. Lewis, Judge