[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO OPEN (#111)
 Facts
The plaintiff, Mallory Lee Vanderkloot, filed the complaint in this action on September 8, 1999. In the complaint, the plaintiff alleges that she owns certain real property located in Lyme. On or about April 17, 1997, the plaintiff's former husband, S. David Friedman, allegedly delivered a promissory note and a deed purporting to convey a mortgage on the plaintiff's property to the defendant Qualified Domestic Trust. The plaintiff alleges that her signature was forged on the documents. She further alleges that the New York notary public acknowledging the forged signatures was not commissioned as a notary public at the time. The plaintiff seeks a declaration that the mortgage deed and note are forgeries and a decree discharging the mortgage.
The mortgage deed, which was submitted with the complaint, identifies the mortgagee as Qualified Domestic Trust f/b/o Maria Helena Mueller. The mortgage also identifies the defendant's principal place of business as "do Selverne Flam Mandelbaum Mintz LLP, 353 Lexington Avenue, New York N.Y." In commencing the action, the plaintiff directed the sheriff to make service on the defendant by registered mail. The address to which the sheriff was directed to make service was the same as the address appearing in the mortgage deed. The sheriff's return indicates that On August 26, 1999, the sheriff mailed the writ, summons, complaint and lis pendens to the "QUALIFIED DOMESTIC TRUST F/B/O MARIA HELENA MUELLER, 353 LEXINGTON AVENUE, NEW YORK, N.Y. 10016." The sheriff's return does not indicate that the name of the law firm was included. The sheriff's supplemental return dated October 7, 1999, indicates that neither the green signature card nor a return envelope was received and that the post office in New York had no knowledge as to the whereabouts of the green card or envelope. Affixed to the supplemental return is a receipt indicating that process was mailed on August 26, 1999. The address on the receipt does not include the name of the New York law firm.
On October 20, 1999, the plaintiff filed with the court an application for a subsequent order of notice. Despite the sheriff's failure to include the name of the law firm when attempting to serve the defendant, the plaintiff's application for a subsequent order of notice stated that "all reasonable efforts . . . including service by registered mail, of the defendant QUALIFIED DOMESTIC TRUST f/b/o MARIA HELENS MUELLER, c/o Selverne, Flam, Mandelbaum Mintz, LLP, 353 Lexington Avenue, New York CT Page 2275 N.Y. have failed." The application requested authorization for service by publication in the New York Law Journal. The application was approved by the court, Austin, J., on October 20, 1999. On December 9, 1999, the plaintiff filed with the court the publisher's affidavit indicating that the order of notice had been published for two consecutive weeks in November, 1999.
On February 1, 2000, the plaintiff filed a motion for a default against the defendant for failure to appear and a motion for judgment. The court entered judgment in favor of the plaintiff on February 14, 2000. On April 19, 2001, the defendant filed a motion to open the judgment. The motion is accompanied by the sworn affidavit of Eric Vaughn-Flam, the trustee of the defendant trust. The plaintiff filed objections to the motion to open on May 3, 2001 and July 11, 2001. On August 8, 2001, the plaintiff filed a memorandum of law and the sworn affidavit of the plaintiff's counsel, John R. FitzGerald, in opposition to the motion to open.
Vaughn-Flam states in his affidavit that he is the trustee of the defendant trust, and that as a result of the erroneous omission of the law firm name when service was originally attempted and the plaintiff's failure to make any subsequent attempt to contact the law firm, he never received notice of the proceedings.[1]
FitzGerald states the following facts in his affidavit. FitzGerald met with the plaintiff on July 19, 1999, at which time the plaintiff informed him: that "Eric V. Flam" was the attorney representing the trust; that Vaughn-Flam had not been associated with Selverne, Flam, Mandelbaum 
Mintz after May 1, 1998; and that Vaughn-Flam had offices as of January 20, 1999, at 405 Lexington Avenue, Suite 4100, New York, N.Y. and 38 Post Road East Westport, CT 06880. FitzGerald sent a letter to Vaughn-Flam at the 405 Lexington Avenue address and the Westport address on July 26, 1999, in which he requested that Vaughn-Flam execute a mortgage release. FitzGerald never received a reply to his letter. FitzGerald subsequently took other steps to ascertain the name and address of the trustee or the address of the beneficiary, including reviewing the recorded mortgage deed and note, searching the land records and making an "internet people search," which was inconclusive. On September 5, 1999, FitzGerald received a letter from the plaintiff's former husband, informing him that Flam-Vaughn had "disappeared and left no forwarding address." In addition to these facts, which are not disputed by the defendant, the plaintiff concedes in her memorandum of law that she did not send the defendant notice of the judgment pursuant to Practice Book § 17-22.[2]
 Discussion
The question before the court is whether the facts as set forth above CT Page 2276 demonstrate that the defendant is entitled to have the default judgment in favor of the plaintiff opened. The defendant argues that the judgment should be opened because the plaintiff did not make adequate efforts to ensure service of process, because the plaintiff never sent notice of the judgment, and because the defendant did not have actual notice of the action prior to judgment. The plaintiff responds by arguing that service by publication was adequate and reasonable because this is an action in rem, that the four month time limit contained in General Statutes §52-212[3] bars the opening the judgment, and that the defendant has failed to disclose a valid defense as required by Practice Book §17-43.[4]
The court will first examine the defendant's contention that service was inadequate in the present case. As an initial matter, the court notes that adequate notice of litigation is required as a matter of due process and is a prerequisite to the court's jurisdiction over an action. "To satisfy the constitutional requirements of due process for in personam jurisdiction there must be a basis for jurisdiction and sufficient notice." D'Occhio v. Connecticut Real Estate Commission, 189 Conn. 162,172, 455 A.2d 833 (1983). "The decisions of the [United States] Supreme Court make it clear that the requirement of reasonable notice must be regarded as part of the constitutional due process limitations on the jurisdiction of a state or federal court." 4A C. Wright A. Miller, Federal Practice and Procedure (3d Ed. 2002) § 1074, p. 358.
Over one-half century ago, the United States Supreme Court addressed the sufficiency of service by publication in Mullane v. Central HanoverBank Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In that case, the court stated: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance. . . ." (Citations omitted.) Id., 314.
"But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." (Citations omitted.) Id., 315. CT Page 2277
"It would be idle to pretend that publication alone . . . is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed." Id.
"This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where its is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." Id., 317.
The court stated, however, that "[e]xceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." Id., 318. More recently, in Mennonite Board of Missions v. Adams, 462 U.S. 791,103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the Supreme Court considered whether notice of a tax sale posted in a county courthouse and published for three weeks in a newspaper satisfied a mortgagee's due process rights. The court observed: "This case is controlled by the analysis in Mullane. To begin with, a mortgagee possesses a substantial property interest that is significantly affected. . . . Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending [proceeding]. . . . When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last know available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of Mullane." Id., 798.
In the present case, the affidavit of the plaintiff's own attorney establishes that the plaintiff was aware at the time of commencing suit that Vaughn-Flam was the attorney representing the mortgagee trust and that Vaughn-Flam was no longer associated with the firm of Selverne, CT Page 2278 Flam, Mandelbaum Mintz. The plaintiff also had two office addresses for Vaughn-Flam that she knew post-dated his departure from his previous firm. Despite this knowledge, the plaintiff never attempted service at either of the two addresses and instead attempted service at Vaughn-Flam's previous address. Furthermore, even the attempted service at the previous address was deficient because the envelope sent by the sheriff did not include the name of the law firm. After the sheriff's supplemental return gave the plaintiff notice of this deficiency, the plaintiff made no attempt to correct the deficiency by attempting service by mail to the full address. The plaintiff did not provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See Mullane v. Central Hanover Bank TrustCo., supra, 339 U.S. 314. The court therefore did not have personal jurisdiction over the defendant when it entered judgment in favor of the plaintiff.
The plaintiff argues, however, that such notice was not necessary because this is an action in rem. The United States Supreme Court has rejected the plaintiff's argument. "The decision in Mullane rejected one of the premises underlying . . . previous decisions concerning the requirements of notice in judicial proceedings: that due process rights may vary depending on whether actions are in rem or in personam."Mennonite Board of Missions v. Adams, supra, 462 U.S. 796 n. 3. "Beginning with Mullane, [the United States Supreme] Court has recognized, contrary to the earlier line of cases, that an adverse judgment in rem directly affects the property owner by divesting him of his rights in the property before the court." (Internal quotation marks omitted.) Id. "This recognition leads to the conclusion that in order to justify an exercise of jurisdiction in rem, the basis for jurisdiction must be sufficient to justify exercising jurisdiction over the interests of persons in a thing." (Internal quotation marks omitted.) Shaffer v.Heitner, 433 U.S. 186, 207, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Therefore, even assuming arguendo that the plaintiff's characterization of this as an action in rem is correct, the defendant is still entitled to reasonable notice.
The plaintiff further argues that the defendant's motion to open should be denied because it was not filed within four months following the default judgment as required by General Statutes § 52-212 (a).[5]
The defendant argues that the four month time limit does not apply because the plaintiff failed to send the defendant notice of the judgment as required by Practice Book § 17-22.[6] The court agrees with the defendant that the four month time limit for bringing a motion to open under General Statutes § 52-212 (a) does not begin to run until notice of the judgment has been given pursuant to Practice Book § CT Page 227917-22. See McLaughlin v. Smoron, 62 Conn. App. 367, 369-371, 771 A.2d 201
(2001); Fontaine v. Thomas, 51 Conn. App. 77, 80 n. 3, 720 A.2d 264
(1998).
More importantly, the defendant's motion to open is not barred by the time limitation contained in § 52-212 because the conditions imposed by that section on the right to open a judgment do not apply where, as here, a judgment has been rendered without jurisdiction. "[I]t is clear that, under the common law, a trial court has inherent authority to open and modify a judgment it rendered without jurisdiction. Such a judgment is void ab initio and is subject to both direct and collateral attack. . . . It is an acknowledged principle of . . . every court in the world, that not only the decisions, but every thing done under the judicial process of courts, not having jurisdiction, are,ipso facto, void. . . . If a court has never acquired jurisdiction over a defendant or the subject matter, . . . any judgment ultimately entered is void and subject to vacation or collateral attack." (Citations omitted; emphasis in original; internal quotation marks omitted.) Broaca v. Broaca, 181 Conn. 463, 467-68,435 A.2d 1016 (1980). "Although §§ 52-212 and52-212a normally limit the authority to open judgments to a four month period, these statutes do not preclude the opening of a default judgment that is rendered without jurisdiction over a defendant." Wilkinson v.Boats Unlimited, Inc., 236 Conn. 78, 83, 670 A.2d 1296 (1996); see also 2 Restatement (Second), Judgments §§ 65-66 (1982).
Finally, the defendant argues that the motion should not be opened because the plaintiff has not demonstrated that it has a good defense as required by § 52-212 and Practice Book § 17-43. As stated above, however, those provisions do not limit a defendant's right to open a judgment entered by a court lacking jurisdiction. There is no merit to the plaintiff's argument.
 Conclusion
The plaintiff's failure to provide the defendant with reasonable notice through service of process deprived the court of jurisdiction. Consequently, the default judgment entered against the defendant is void. For this reason, the defendant need not satisfy the requirements of General Statutes § 52-212 and Practice Book § 17-43 to be entitled to open the default judgment.
The motion to open the default judgment is granted.
Martin, J. CT Page 2280